# NATHAN DAVIS

## V.

# NORMAN T. GASSETTE.

*Brokers—Exchange of Real Property—Commissions—Abandonment.*

1.   A real estate broker, to be entitled to commissions for effecting a sale, must show that he has produced a  purchaser ready and willing to take the property on the  terms specified, or that his efforts were the procuring cause of a sale made by the  principal.

2.   The fact that an exchange of property.is finally effected  through the efforts of the principal and another broker with a  person to whom the first broker has tried to effect a sale without success, furnishes no basis for a  claim for commissions by the  first broker, especially if he has long since abandoned his efforts to sell the property.

3.   Merely advising the consummation of an exchange of property does not entitle  the broker to a commission, unless such advice so contributed  to the result as to be fairly regarded as the procuring cause of the transaction.

[Opinion filed January 16, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

Messrs. SWIFT & CAMPBELL, for appellant.

Messrs. MILLARD & SMITH, for appellee.

There is no pretense of fraud or misrepresentation, or negligence on the part of appellee.   The change of terms was not produced by any negligence of appellee or by his agency, " but by negotiations  to which appellant was an immediate and principal party, and was by him freely consented to."   Davis might have insisted upon a  sale of his property for  cash, or upon such terms for the  payment of  money as he  may have given to appellee, his broker, and compelled its payment, or refused to sell or trade, and thus he might have clearly avoided all liability for  commissions.   He freely consented, however, at the instance of Pardridge, to take  Pardridge's property in lieu of money for his property, and completed the sale.   Mr. Gassette thereupon became entitled to his commissions.

The commissions of a broker for the sale of real estate are due when he has found a purchaser who buys the property, and his right to such commissions is not affected by a modification or change of the terms of payment made between the buyer and seller, different from the terms first given by the seller to the broker. Lawrence v. Atwood, 1 Ill. App. 217.

"Brokers are persons whose business it is to bring buyer and seller together. They need have nothing to do with the negotiation of the bargain." Inslee v. Jones, Brightly's N. P. Rep. 76; Weatherall v. Latner, 21 Barb. 145.

"A broker becomes entitled to his commissions whenever he procures for his principal a party with whom he is satisfied, and who actually contracts for the purchase of the property at a price acceptable to the owner." Wharton on Agency, Sec. 328; Keys v. Johnson, 68 Pa. St. 42; Kock v. Emmerling, 22 How. (U. S.) 69.

Even when, after the purchaser comes in, the vendor voluntarily reduces the price of the property or the quantity, or otherwise changes the terms of sale as proposed to the broker, so that a sale is consummated, or terms or conditions are offered which the proposed buyer is ready and willing to accept, in either case the broker will be entitled to his commissions at the rate specified in his agreement with his principal. Wharton on Agency, Sec. 329; Stewart v. Mather, 32 Wis. 344.

In Stewart v. Mather, *supra*, the court used the following language on this point:

"Where the price or other terms of sale are fixed by the seller, in accordance with which the broker undertakes to produce a purchaser, yet if, upon procurement of the broker, a purchaser comes, with whom the seller negotiates, and thereupon voluntarily reduces the price of the thing to be sold, or the quantity, or otherwise changes the terms of sale as proposed to the broker, so that a sale is consummated, or terms or conditions are offered which the party proposing to buy is ready and agrees to accept, then, and in either such case, the broker will be entitled to his commissions at the rate specified in his agreement with his principal." Woods v. Stephens, 46 Mo. 555; Lincoln v. McClatchie, 36 Conn. 136.

Davis v. Gassette.

"The authorities cited show that whenever the sale is effected through the efforts of the broker, or through information derived from him, so that he may be said to have been the procuring cause of it, his services are regarded as highly meritorious and beneficial, and the law leans to that construction which will best secure the payment of his commissions, rather than the contrary."

While negotiations by a broker are merely pending, the owner, having committed the matter to the broker, can not resume its control so as to escape commissions. Wharton on Agency, Sec. 327; Keys v. Johnson, 68 Pa. St. 42.

Moran, J. The evidence in this record discloses the following facts: Late in November, 1885, appellee solicited from appellant the sale of certain property situate on Archer avenue, belonging to the wife of appellant. Appellant consented, and appellee advertised the property extensively and at considerable cost and procured it to be listed at an auction of real estate, but did not succeed in effecting a sale. About the middle of April, 1886, appellee, in a conversation had with E. Pardridge, called his attention to the property and afterward wrote him a note giving a detailed description, stating the price, etc., and Pardridge went to look at the property, and after inspecting it told appellee that he did not want it; that he would not buy it; that it was situated in a bad neighborhood.

The property was not afterward called to Pardridge's attention by appellee. In May, 1887, one Pflaum, who is a real estate broker, knowing that Pardridge had premises on South Park avenue which he wanted to trade, commenced negotiations between Pardridge and appellant for a trade of the South Park avenue property for the Archer avenue property, and brought the parties together, and a contract for the exchange of the property was made. Pending the negotiations Pardridge, having some dispute with appellant as to the price for which the Archer avenue property had been offered by appellee for sale, went to see appellee, and asked what that price was, and appellee told him, and Pardridge then said that he thought of trading the South Park house for the property.

Appellee soon after met appellant and stated the inquiry that Pardridge made and appellant told him that he had made a contract through Pflaum with Pardridge for a trade for the South Park avenue house.

As to the foregoing facts there is no dispute between the parties, but as to some other facts there is a conflict in the evidence. Appellee claims that appellant gave him the exclusive agency for the sale of the property; appellant denies that he gave the exclusive agency, and swears that he told appellant that several brokers had the property.

Appellee contends that appellant, before he closed the trade with Pardridge, asked his opinion of the transaction; that he told him that it would be a good thing to do and that Pardridge was his customer, and he should claim his commissions. Appellant asserts that he did not ask appellee's advice as to the trade, but told him he had already made the contract to trade, and that appellee tried to dissuade him, saying that the South Park avenue house stood empty and was hard to rent; that appellee in that conversation claimed no commission of him but claimed that Pflaum ought to divide commissions with him.

Appellee in his testimony based his claim to recover on two grounds, viz.: His exclusive agency to sell the property, and the fact that he first offered the property to Pardridge for sale and that before the trade was made, Davis and Pardridge got his judgment on the matter.

It is, in our opinion, very clear upon the whole record, that appellee did not earn commissions by the performance of his contract. His agency was to sell the property at a specified sum. It would be absurd to say that he could earn his commissions by bringing to his principal a customer with a mere offer to trade for the property. It is true that if Pardridge, when he went to look at the property at appellee's instance, had offered to trade with appellant, and an exchange was brought about between them by negotiations instituted by the efforts of appellee, he would have a claim for his commissions founded on a basis of justice, for the parties were brought into communication through his agency, and the principal having

Davis v. Gassette.

the power to negotiate with the purchaser on different terms, his doing so would be a waiver of the terms given to the agent. In such case the endeavor of the agent would be the efficient cause of procuring the transaction. But the evidence in this record shows no such case. Here, a year before the trade was made, Pardridge had absolutely declined to have anything to do with the property on the terms on which appellee was authorized to offer it, and no negotiations of any kind between appellant and Pardridge resulted from the meeting brought about by appellee. At that time trading does not seem to have entered the thoughts of either party. The exchange of properties was brought about a year later by another broker, who got the parties together on a proposition to trade appellant's property instead of to sell it.

The fact that appellee first called Pardridge's attention to the property can not be held, as it seems to us, to have contributed proximately to the subsequent trade between the parties. All the attempts on the part of appellee to induce Pardridge to purchase the property had ceased more than a year before Pflaum brought the parties together in the trade negotiation.

The fact that a sale or exchange of the property is finally brought about by the efforts of the principal or another broker with a person with whom the first broker had previously negotiated without success, will not furnish a legal basis for a claim for commissions by the first broker, especially when it appears that the first broker has for a long time ceased negotiations with the purchaser, and abandoned all efforts to induce him to take the property on the proposed terms. Lipe v. Ludewick, 14 Ill. App. 372; Sibbald v. Bethlehem Iron Works, 83 N. Y. 378.

In the case last cited it was said that "a broker is never entitled to his commissions for unsuccessful efforts. The risk of failure is wholly his. The broker may devote his time and labor and expend his money with ever so much devotion to the interest of his employer, and yet if he fails—if, without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is in good faith terminated, he gains no right to commissions. * * * And in such event

it matters not that after his failure and the termination of his agency what he has done proves of use and benefit to the principal.   In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally led to, and materially assisted in the consummation of a sale; he may have planted the very seed from which others reap the harvest, but all that gives no claim."

But it is claimed that appellee earned his commissions in this case because he advised the parties to conclude the trade. It may be doubtful whether merely advising the consummation of a bargain, of which the efforts of a rival are the procuring cause, would entitle a broker to commissions.   It ought certainly to be shown that the advice given contributed so materially to the result as to be fairly entitled to be regarded as the procuring cause of the transaction.

In view of the foregoing considerations the instruction given on behalf of appellee by the court below was, as applied to the facts of this case, misleading in its tendency.   Said instruction is as follows:

"If the jury believe from the evidence that the defendant employed the plaintiff as his broker to assist the defendant to make a sale of his property on Archer avenue, Chicago, and that the plaintiff did assist the defendant in disposing of his said property, and that the defendant in fact made a trade of said property upon the terms proved in evidence, then the plaintiff is entitled to recover the value of such services according to the usual rates paid therefor in the city of Chicago, although there may have been a change in the proposition or terms of sale."

Under this instruction if the jury should believe that the fact of appellee's calling Pardridge's attention to the property, stating to him the price and urging it upon him as an investment, did in fact assist appellant in ever so remote a degree in finally disposing of it, then appellee should be entitled to his commissions, notwithstanding they might believe that the natural and proximate cause of the transaction was to be found

in the efforts of Pflaum.  So if the jury believed that appellee gave the advice which he testified he gave, and that such advice tended to aid the consummation of the bargain, he should have commissions, even though such advice was not the procuring cause of the transaction.  As we have already seen, such is not the law.  In order to be entitled to commissions it is indispensable that the broker should show that he has produced a purchaser ready and willing to take the property on the terms specified, or that his efforts were the procuring cause of the sale which the principal has made to the purchaser with whom he has been brought into communication. Mechem on Agency, Sec. 966, and cases cited.

Of course if there is bad faith on the part of the principal, or if he puts the property in the hands of other brokers when he has given it to one under an agreement that he shall have the exclusive agency, a different question is presented.  Appellee does claim that he had the exclusive agency in this case, but the case was not submitted to the jury on any such theory, and we are not at this time called on to discuss the law applicable to that phase of the case.

The judgment must be reversed and the case remanded.

*Reversed and remanded.*