C. V. BANTA, Jr.

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 21, 1898.*

1. BROKERS—*term "stock broker" defined.* A stock broker is one who, for commission, attends to the sale and purchase of stocks or shares, and of government and other securities, in behalf and for the account of clients.

2. SAME—*stock broker may have possession of securities and settle payments therefor.* A stock broker may be intrusted with the securities of his client, may take or transfer them without the name of his principal appearing, and may pay or advance the price for purchases or receive payment for sales.

3. SAME—*members of Chicago Stock Exchange are "brokers."* Members of the Chicago Stock Exchange are "brokers," within the meaning of the ordinance of the city of Chicago requiring a license fee for the privilege of carrying on the business of a broker, and they are liable to punishment for violations of such ordinance.

4. SAME—*words "goods, wares and merchandise," in license ordinance, include stocks.* The words "goods, wares and merchandise," used in an ordinance which defines a broker to be one engaged, for a commission, in selling "goods, wares and merchandise or produce and grain," include within their meaning shares of stock in corporations, or other securities or bonds.

5. LICENSES—*right of legislature to authorize city to impose license fee on occupations.* Section 1 of article 9 of the constitution of 1870 expressly authorizes the legislature to tax certain occupations, including that of a broker; and this power may lawfully be delegated to cities, towns and villages of the State, for exercise within their respective limits.

6. SAME—*city may impose license fee on brokers.* By virtue of a grant of power from the legislature, cities, towns and villages in the State may impose license fees upon the occupations named in section 1 of article 9 of the constitution, including that of a broker, either for the purpose of revenue or regulation, the only requirement being that the license be uniform as to the class on which it operates.

APPEAL from the Criminal Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

HAMLINE, SCOTT & LORD, for appellant:

The essential difference between a factor and a broker is, that while the former has the possession of the goods to be sold, the latter has not.   The former is authorized to buy and sell in his own name; the latter may only deal in the name of his principal.   *Murray* v. *Doud*, 167 Ill. 368; *Saladin* v. *Mitchell*, 45 id. 79; 4 Am. & Eng. Ency. of Law, (2d ed.) 961, note; *Warren* v. *Bank*, 149 Ill. 1; *Baring* v. *Corrie*, 2 B. & A. 138; Story on Agency, sec. 34; *Crane* v. *Nolan*, 19 L. C. Jur. 309; *Perkins* v. *State*, 50 Ala. 154; *Braun* v. *Chicago*, 110 Ill. 188; *Hass* v. *Ruston*, 14 Ind. App. 8; *Graham* v. *Duckwell*, 8 Bush, 12; *Butler* v. *Dorman*, 68 Mo. 298; *Bernhouse* v. *Abbott*, 45 N. J. L. 531; *Bank* v. *Snyder*, 10 Mo. App. 215; *Higgins* v. *Moore*, 34 N. Y. 417; *Price* v. *Insurance Co.* 43 Wis. 276; *Spears* v. *Loague*, 6 Coldw. 422; *Slack* v. *Tucker*, 23 Wall. 321.

It is by virtue of possession that the factor acquires his lien.   *Winnie* v. *Hammond*, 37 Ill. 99; *Eaton* v. *Truesdale*, 52 id. 311.

As between the parties to a sale it is enough that the certificate is delivered with a blank indorsement, which confers authority upon the purchaser, or any one he may name, to fill up the assignment.   *Bank* v. *Bank*, 105 U. S. 221; *Johnson* v. *Laflin*, 103 id. 804.

It is because the certificate is the symbol of the stock, and the possession thereof is the possession of the stock, that the courts recognize that stock may be pledged by delivery of the certificate. 18 Am. & Eng. Ency. of Law,

610; *Watson* v. *Little*, 2 N. Y. 446; *Casey* v. *Cavaroc*, 96 U. S. 467; 1 Cook on Stockholders, (3d ed.) par. 465.

The right to make a contract is a property right. *Ramsey* v. *People*, 142 Ill. 380.

The privilege or liberty to engage in the business of selling goods as a broker on commission is one of profit,— of presumptive value,—the denial of which is a deprivation of both liberty and property to the extent that the right to contract is denied.   *Frorer* v. *People*, 141 Ill. 171.

Due process of law is synonymous with "law of the land," and "law of the land" means general public laws, and not partial or private laws affecting the rights of private citizens or classes of individuals. *Millett* v. *People*, 117 Ill. 294; *Eden* v. *People*, 161 id. 303.

Under the police power the legislature may not prohibit, restrict or hamper a business the prosecution of which inflicts no damage upon others.   Tiedeman on Police Powers, sec. 85; *Eden* v. *People*, 161 Ill. 303.

The police power extends solely to the protection of the lives, health and property of the community against the injurious exercise by any citizen of his own rights. (*Patterson* v. *Kentucky*, 97 U. S. 502.)   The business of a broker does not affect or jeopardize the life, health or property of any one, and has no such tendency.

HOWARD S. TAYLOR, City Prosecutor, and GEORGE McA. MILLER, Assistant, for appellee:

A broker is one who makes a bargain for another and receives a commission for so doing, as, for instance, a stock broker.   Story on Agency, sec. 32.

Stock is one thing and a certificate is another.   The former is the substance and the latter is the evidence of it.   *Hawley* v. *Brumagin*, 33 Cal. 399.

A certificate does not constitute the title to the stock. In legal contemplation the certificate is merely an additional and convenient evidence of ownership of the stock. *Railroad Co.* v. *Pearce*, 28 Ind. 502.

A certificate of title to a share is not a share. It is evidence of the shareholder's interest. *VanAllen* v. *Assessor*, 3 Wall. 598.

Certificates of stock are muniments of title,—evidence of the holder's right to a proportion of the property and franchises of the corporation. *Campbell* v. *Morgan*, 4 Ill. App. 103; *Payne* v. *Elliott*, 54 Pa. St. 339; *Mitchell* v. *Beckman*, 64 Cal. 117; *Johnson* v. *Railroad Co.* 40 How. Pr. 193; *Arnold* v. *Bank*, 27 Barb. 424; *McAllister* v. *Kuhn*, 96 U. S. 89; *Hubbell* v. *Drexel*, 11 Fed. Rep. 115.

Brokers may contract in their own names, provided their principals have given them authority to that effect or if the usual course of dealing warrants them so to do. Russell on Factors, 52.

A broker has, in general, no authority, as such, to receive payment for goods sold by him on account of his principal, but if the custom of trade or the usual course of dealing between himself and his principal warrants him so to do he may receive payment for goods so sold. Russell on Factors, 54.

The ordinance of the city of Chicago in question, and the statute authorizing it, are not unconstitutional. *Firemen's Benev. Ass.* v. *Lounsbury*, 21 Ill. 513; *People* v. *Thurber*, 13 id. 556; *Insurance Co.* v. *Peoria*, 29 id. 180; *East St. Louis* v. *Wehrung*, 46 id. 392; *Ducat* v. *Chicago*, 48 id. 172; *Chicago Packing Co.* v. *Chicago*, 88 id. 227; *Walker* v. *Springfield*, 94 id. 372; *Lovingston* v. *Trustees*, 99 id. 564; *East St. Louis* v. *Trustees*, 102 id. 489; *Wiggins Ferry Co.* v. *East St. Louis*, id. 560; *Timm* v. *Harrison*, 109 id. 593; *Braun* v. *Chicago*, 110 id. 186.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The city of Chicago adopted an ordinance declaring it unlawful for any person, association or corporation to engage in business in the capacity of a "broker" within said city without having paid a license fee and obtained a license authorizing such person, association or corpora-

tion to transact business in that capacity. The appellant was tried upon a stipulated state of facts, by the court without a jury, and was convicted of violating said ordinance and a fine of $25 was assessed against him. This is an appeal from such judgment of conviction.

Counsel for appellant urge the court erred in its rulings upon propositions submitted to be held as the law of the case, and in their brief, with reference to such alleged erroneous rulings, say: "It will be perceived that the propositions given and refused present squarely these questions: First, was not the business carried on by Banta that of a factor, and not a broker? Second, if Banta is a broker, is he not such a broker as is not covered by the ordinance in question? Third, does not the constitution forbid the legislature empowering the city of Chicago to require one engaged in the avocation of a broker to take out a license as a condition precedent to the right to carry on his business? Fourth, if the ordinance levies a tax, is it not in violation of the constitutional requirement that taxes on brokers should be uniform, and the constitutional requirement that taxes for corporate purposes should be uniform in respect to persons and property?" We will consider and dispose of these questions in the order as stated by counsel.

The stipulation as to the facts and the ordinance are as follows:

"It is hereby stipulated by the parties hereto that the defendant, Banta, is a citizen of Chicago and a member of the Chicago Stock Exchange, a voluntary association composed of 445 members, which members become members thereof upon election thereto by the governing committee of said board, payment of an initiation fee and signing the constitution and by-laws thereof; that said stock exchange has a board room in the city of Chicago, to which none but members are admitted, and at which room stocks, bonds and other securities are bought and sold by the members thereof as agents for others, on a

call made daily, excepting Saturdays, from 10 A. M. until 2 P. M.   Under the rules of said exchange no member thereof can buy or sell stocks or bonds or other securities save in the room of said exchange and between the hours aforesaid, and no member can belong to any similar association within the State of Illinois.   By the constitution of said exchange no fictitious sales can be made and no fictitious or trifling bids or offers can be made, and all bonds, securities and all certificates of stock dealt in are obliged to be delivered on the floor of said exchange or at the place of business of the member who is the purchaser, and under said constitution every member must have in the vicinity of the exchange a place of business other than the exchange, where comparisons may be made at any time during the day and where notices may be served.   The constitution and by-laws are signed by every member on joining said exchange, and any violation of such constitution or by-laws subjects the offender to fine, suspension or expulsion, at the instance of the governing committee of said exchange.   The defendant's sole business consists in buying and selling stocks, bonds and other securities on the floor of said exchange for customers from whom he receives orders at his office to buy or sell said stocks, bonds or other securities on said exchange, and the manner of his doing said business is invariably as follows, to-wit:   A customer gives him an order to buy stocks.   Defendant goes onto the stock exchange, makes a contract with a member of the exchange for the purchase of stock, and in all cases receives from such member on the floor of the exchange or at his office the certificates of stock so bought, endorsed with blank assignment of shares of stock and blank power of attorney to make necessary transfer on books of the corporation issuing such stock, and in payment therefor the defendant gives to such member his own check.   Defendant then delivers to his customer said certificates of stock so bought upon receiving from said customer a check for

172—14

the purchase price thus paid, plus the defendant's commission for making such purchase. In case of a sale it is defendant's invariable custom to receive the certificates of stock from the customer, endorsed with blank assignment of shares of stock and blank power of attorney to make necessary transfer on books of the corporation issuing such stock, sell the stock and deliver the certificates thereof to the member of the exchange buying, receive from him his check for the purchase price, and give to his customer defendant's check for the stock sold, less his commissions. In every case of purchase or sale the certificates of stock are actually delivered. In the case of a purchase they are delivered to defendant by the member selling and then by defendant to his customer. In case of sale they are received by defendant from his customer and delivered to the member of the exchange buying the same. Such delivery to the purchasing member of such stock so sold by defendant is invariably made within a short time after the sale,—at the latest by 10:30 o'clock of the morning after the sale. In some cases, when the parties so require, said delivery takes place at the instant of the sale. It is also agreed that this defendant always buys or sells on the stock exchange in his own name, but he acts exclusively for others, and does not buy or sell on his own account, and that this is true, generally, of the transactions of members of the exchange. The person for whom the member of the exchange buys stock from this defendant is not usually known to this defendant. The commissions in the case of purchase or sale are those specified in article 19 of the constitution of the Chicago Stock Exchange, section 1 of which is as follows, to-wit:

" 'Sec. 1. Commissions shall be charged, and paid under all circumstances, and upon all transactions, both purchases and sales, or upon contracts for the receipt or delivery of securities. Such commissions shall be calculated, in all cases, upon the par value of securities, and

shall be at the rates hereinafter named; and such rates shall be, in each case, the lowest commission that may be charged by any member of the exchange, and shall be absolutely net, and free from all or any rebatement, return, discount or allowance, in any shape or manner whatsoever, or by any method or arrangement, direct or indirect. And no bonus, percentage or portions of the commissions so established shall be given, paid or allowed, directly or indirectly, to any clerk or person, for business sought or procured for any member of the exchange.'

"The commissions vary with the price for quantity of stock, bond or other securities sold or bought. In some cases it happens that defendant receives orders from customers to buy or sell shares of stock which are in conflict with the orders received from other customers. In such event defendant procures another member of the board to act as his agent in making purchase or sale, and pays him one-half of the commissions for his services, unless at the end of the day, by agreement between defendant and such other member of the board, the trade is re-transferred back to the defendant, in which case defendant pays the other member of the board at the rate of two dollars per hundred shares for his services. But in every case the certificates of stock that the defendant is ordered to sell are delivered by the defendant, and not by such agent, to the purchaser, and the certificates of stock defendant is ordered to buy are received by defendant, and not by his agent, from the seller, and are delivered by defendant to the customer. Defendant does no other business save that above stated, and could not do any business in stocks, bonds or other securities in any other way without violating the rules of the stock exchange, in which event defendant would be liable to fine, suspension or expulsion therefrom.

"It is further stipulated that the city of Chicago is a municipal corporation in the State of Illinois, is incor-

porated under the general City and Village act, and that there is now, and has been since the 11th of June, A. D. 1897, an ordinance in force, the same being the ordinance for the alleged violation of which the defendant was arrested and fined, and which is as follows, to-wit:

" 'Sec. 213.   It shall be unlawful for any person, firm, corporation or association in the city of Chicago to engage in the business or act in the capacity of a broker, including real estate brokers and insurance brokers, without first obtaining a license therefor, and paying a license fee in the sum of $25 per annum, the issuance of such license to be regulated by the general ordinances now or hereafter in force.

" 'Sec. 214.   A broker is one who, for commission or other compensation, is engaged in selling or negotiating the sale of goods, wares, merchandise, produce or grain belonging to others.

" 'Sec. 215.   A real estate broker is one who, for commission or other compensation, is engaged in the selling of or who negotiates sales of real estate belonging to others, or obtains or places loans for others on real estate.

" 'Sec. 216.   An insurance broker, within the meaning and intent of this chapter, shall include any and every person, firm, corporation or association engaged in soliciting, procuring or placing, for a consideration received or to be received, insurance on lives, or on buildings, vessels or other property, either directly or through any other broker or through any insurance agent, in or with any insurance company or association other than an insurance company or association of which such person, firm, corporation or association soliciting, procuring or placing the insurance in any case shall be the duly authorized agent.

" 'Sec. 217.   Any person, corporation or association violating any of the provisions of this chapter shall, upon conviction thereof, be fined not less than $25 nor more than $200 for each offense.'

"In the case of bonds and securities other than stocks, defendant receives them from his customers, sells them in his own name and delivers them, and in case of purchase buys them in his own name, receives them and delivers them to his customer."

The insistence of counsel for appellant is, it appeared from the stipulated facts that appellant had possession of the stocks, bonds or other securities which he sold or undertook to sell, and that he received stocks, bonds or other securities bought by him, and that the transactions, whether purchases or sales, were made in his own name, and that he paid for all stocks, bonds or securities which he purchased, and received the price for all those sold. Upon this insistence counsel contend that the business in which the appellant was engaged was that of a factor and not of a broker, and cite in their brief an array of authorities in support of the proposition that a broker is a mere negotiator of contracts for other parties; that his duties are confined to the matter of making contracts between others concerning their goods or effects; that he does not have possession of the property or thing to be bought or sold; that he cannot buy or sell in his own name; that he does not pay for that which is bought or receive the price for that which is sold.

This definition of the term "broker" is broader than that given in the earlier books and narrower than that which is accepted at the present day. A broker, as defined in the earlier authorities, is a person employed by merchants English and merchants strangers in contriving, making and concluding bargains and contracts between them concerning their wares and merchandise, and the moneys to be taken up by exchange between such merchants and tradesmen. (Com. Dig. Merchant C.) The operations of brokers gradually extended, however, to the affairs of others than merchants domestic and merchants foreign, and they engaged generally in business as negotiators of contracts and bargains between others. Their

transactions were, however, confined to the negotiation of contracts as "middle-men" empowered to explain the intentions of both parties, and to put them in condition to come together personally and conclude the contract of bargain and sale. A broker was not, therefore, entrusted with the possession of what he was employed to sell, nor empowered to make a contract in his own name or receive the money paid for the article sold or pay for the article bought. During this period brokers restricted their operations to the negotiations of contracts for the purchase and sale of tangible things, and while their business was thus restricted the definition adopted by the appellant was applicable and correct. But the business of brokers continued to expand, and they subsequently undertook to effect the negotiation of bonds and other evidences of indebtedness, and certificates of shares in the capital stock of incorporated companies. The advent of brokers into this branch of business is referred to by Chief Justice Beck in the early case of *Gibbons* v. *Rule*, 12 Moore, 539, (13 E. C. L. 444,) which was decided in 1827, as follows: "The statute 8 and 9 William III, chap. 20, by which the first government loan was raised, speaks of a new description of brokers,—persons employed in buying and selling tallies, the government securities of those days. These have since been called stock brokers." The statute referred to was enacted by the Parliament of England in the year 1697.

The transition from the restricted to the more enlarged sphere was attended with additional powers corresponding to the new duties of brokers, and a new definition of the term "broker," or qualifications and exceptions to the former definition, became imperatively necessary. Speaking upon this subject, Mr. Russell, in his work on Factors and Brokers, (published in 1845,) on page 16 says: "Each of these definitions, however, must at the present day be regarded as somewhat too limited. By the two former, for instance, the employment of brok-

ers is confined entirely to dealings between merchant and merchant,—a description which, it will at once be seen, would exclude stock brokers, a class most extensively engaged on behalf of persons not merchants; and by the last, they are described to be persons engaged in making private bargains only,—a limitation which would equally exclude those of them who are in the habit of attending public sales, such as the sales of the East India Company, and who, whilst acting in that capacity, can scarcely be said to enter into none but private contracts." And with reference to the power of a broker to contract in his own name, the same author on the same page says a broker must, as a "general rule," contract in the name of his principal. Mr. Edwards, in his work on Factors and Brokers, (1870) in section 109 says a broker is at liberty to buy in his own name if such be the custom among brokers. And Mr. Story, in his work on Agency, (sec. 109,) says there are exceptions, by the usages of trade, to the rule that a broker cannot make a contract in his own name. And speaking to the same point, Russell on Factors and Brokers (p. 52) says: "They (brokers) may, however, contract in their own names, provided their principals have given them authority to that effect or if the usual course of dealing warrants them to do so." In Edwards on Factors and Brokers, (sec. 97,) speaking with reference to the possession of the property negotiated by a broker, it is said that "ordinarily he (the broker) does not have or acquire the possession of the property." And in Story on Agency, (sec. 34,) speaking to the same point, it is said "the broker does not usually have possession."

With relation to the old-time rule that a broker did not pay the purchase price of goods bought or receive the price of those sold, like exceptions and qualifications may be noted. Mr. Story, in his work on Agency, (9th ed. p. 36,) says: "But it may be the duty of a broker, under the employment he has undertaken, to see to the delivery of the goods and the payment of the price." And in Rus-

sell on Factors and Brokers (p. 54) it is said: "But if the custom of trade or the usual course of dealing between himself (the broker) and his principal warrant him to do so, he may receive payment for goods so sold."

In large commercial centers those brokers who negotiated purchases and sales of securities and certificates of shares in incorporated companies found it convenient and greatly to their advantage to establish some convenient place for transacting the business of brokerage in stocks, and to form associations, commonly called "stock exchanges," and to adopt rules and regulations for the government of the members of such exchanges in the transaction of their business as brokers. These associations or exchanges have become almost the sole medium for the purchase and sale of stocks, bonds and other securities in all our great cities, and the prices current from day to day in such exchanges practically fix the value of such securities and stocks. The rules and regulations adopted by such exchanges prescribe the duties, declare the powers and liabilities of the members and control the course of dealing between them. The members of such boards are, and have long been, universally recognized as brokers, and so denominated. The author of the article on stock brokers in 23 American & English Encyclopedia of Law (p. 700) says: "A stock broker is a broker who, for a commission, attends to the purchase and sale of stocks or shares, and of government and other securities, in behalf and for the account of clients. Even before the organization of stock exchanges, and as early as the latter part of the seventeenth century, persons who engaged in the business of buying and selling securities were denominated "stock brokers." The functions of the stock broker are broader than those of the ordinary broker, who, as a rule, acts as a mere negotiator, and is not entrusted with the possession of the property concerning which he acts, while the stock broker frequently is entrusted with the possession of the

securities, and may even take and transfer them without the name of his principal appearing in the transaction, and often pays or advances the price and receives payment." Some of these broader duties and powers possessed and exercised by the class of brokers who, as members of stock exchanges, deal in evidences of indebtedness, certificates of shares in the capital stock and assets of incorporated companies, in some respects pertain more nearly to the functions of factors or bankers, but, as we have seen, they are now, and for many years have been, exercised and possessed by such brokers as well. A broker may, in the course of a transaction, exercise some of the functions of a factor or of a banker and be none the less a broker. It is believed the meaning now most usually given, in common acceptation, to the word "broker," is, one who transacts the business in which it appears from the stipulated facts this appellant is engaged.

We cannot assent to the view urged by counsel for appellant that the ordinance does not include brokers who deal in stocks, bonds and securities. The argument in support of this view is, that section 214 of the ordinance was adopted by the city council for the purpose of interpreting the word "broker" employed in section 213, and that, properly construed, appellant, even if deemed a broker, is not one of the class of brokers defined by section 214 as intended to be required to pay a license fee under the provisions of section 213. Section 214 is as follows: "A broker is one who, for commission or other compensation, is engaged in selling or negotiating the sale of goods, wares, merchandise, produce or grain belonging to others." It is urged that it appeared from the statement of agreed facts that appellant was engaged in buying and selling stocks, bonds and other securities,— not goods, wares and merchandise or produce and grain, —and hence his business was not that contemplated to be included in the provisions of section 213, as inter-

preted and limited by section 214. But we think the better and more firmly established doctrine is, that, in the absence of any qualifying or restricting clause, the phrase "goods, wares and merchandise" includes and comprehends shares in the capital stock of incorporated companies, and other securities which are the subject of common barter and sale, and which are given visible and palpable form by means of certificates, bonds or other evidences of indebtedness. *Tisdale* v. *Harris*, 20 Pick. 9; *Baldwin* v. *Williams*, 3 Metc. (Ky.) 365; *Pray* v. *Mitchell*, 60 Me. 430; *Dowdel* v. *Hamm*, 2 Watts. 61; *Ryall* v. *Rolle*, 1 Atk. 180; *Crichton* v. *Symes*, 3 id. 62; *Moore* v. *Moore*, 1 Bro. C. C. 128; *Somerby* v. *Buntin*, 118 Mass. 285; *Jackson* v. *Robinson*, 1 Yeates, 101; Am. & Eng. Ency. of Law, art. "Goods;" Anderson's Law Dic.; Bouvier's Law Dic.

Nor do we think the ordinance contravenes any constitutional provision. It is a well recognized attribute of the sovereign power, to tax any and every occupation and employment for the purpose of raising revenue. (Cooley on Taxation, pp. 570-572, 592.) Like power also rests with the sovereign to impose a tax, in the nature of an exaction, for the privilege of pursuing certain callings, namely those which the sovereign, by virtue of the police power, may interdict or regulate, or those wherein the privilege is in the nature of a franchise, or others which, because of exceptional and particular reasons affecting public policy, are deemed proper subjects for supervision or regulation by the State. (Cooley on Taxation, pp. 570-572, 592; *Wiggins Ferry Co.* v. *City of East St. Louis*, 102 Ill. 560; *Braun* v. *City of Chicago*, 110 id. 186.) The tax upon occupations or employments, whether for revenue or as an exaction for the privilege of pursuing a calling, may be imposed and collected in the form of a license fee. (Cooley on Taxation, pp. 591, 592, 597.) The constitution of 1870 has no provision limiting the power of the State to exercise this sovereign right of taxation, whether the tax be laid for revenue or for purposes of regulation,

(*Wiggins Ferry Co.* v. *City of East St. Louis, supra,*) except that, as section 1 of article 9 of the constitution specifically mentions certain occupations which may be taxed, the right to-tax others is denied by the familiar rule of construction that the enumeration of certain occupations implies the exclusion of all others. (*City of Cairo* v. *Bross,* 101 Ill. 475.) Section 1 of article 9 of the constitution of 1870 expressly authorizes the General Assembly to tax various occupations, including brokers, the only restriction being the requirement that such tax should be uniform as to the class upon which it operates. The General Assembly delegated to the cities in the State the power to impose such taxation within their respective jurisdictions. (Rev. Stat. chap. 24, par. 62, clause 91.) It was competent for the General Assembly to delegate the exercise of such power within the limits of cities and villages to such municipalties. *City of East St. Louis* v. *Wehrung,* 46 Ill. 392; *Howland* v. *City of Chicago,* 108 id. 496.

It is not urged the ordinance is unreasonable or oppressive in respect of the amount of the license fee, but it is urged the business of a broker is not hurtful to the public peace, safety or morals, and' that no other reason can be given why such business should be deemed a proper subject of regulation or prohibition, under the police power or otherwise. It is therefore asserted the city is driven to the position that the ordinance is a revenue measure, and is lawful as such. The terms of the ordinance do not indicate whether the license fee is required for the purposes of revenue or for regulation merely. It is true that in order to be effectual a license must confer authority to do that which without the license would be illegal; but it does not follow that only such occupations as might be inhibited or regulated under the police power, or for other similar reasons hereinbefore referred to, may be required to take out license in order to legally transact business. The occupation may be lawful in itself and not subject to prohibition or regula-

tion by the State, yet it may be prohibited in order to compel the taking out of a license, if the purpose is to raise revenue by means of license fees. (Cooley on Taxation, pp. 596, 597.) Therefore the mere fact that the effect of the ordinance is to declare it to be unlawful to transact the business of a broker without license does not indicate whether the purpose is to raise revenue or to regulate and control the business. Mr. Cooley, in his work on Taxation, (p. 597,) says that the language of the ordinance, or its terms, may be expected to indicate with sufficient precision whether the license is required for purposes of revenue or for regulation merely, the intendment being that regulation is the object, unless there is something in the language indicating with sufficient certainty that the purpose is to produce revenue. In the view we take of the case it is not material to determine whether the license fee is for revenue or for purposes of regulation. We think it is well settled by repeated decisions of this court that the State in its sovereign capacity, and the cities and villages of the State by virtue of the grant of the power by the General Assembly, have ample power and authority to impose license fees upon the occupation of a broker and the other trades or occupations mentioned in section 1 of article 9 of the constitution of 1870, for the purposes either of regulation or revenue. *People* v. *Thurber*, 13 Ill. 554; *Firemen's Benevolent Ass.* v. *Lounsbury*, 21 id. 510; *Illinois Mutual Fire Ins. Co.* v. *City of Peoria*, 29 id. 180; *City of East St. Louis* v. *Wehrung*, 46 id. 392; *Ducat* v. *City of Chicago*, 48 id. 172; *Chicago Packing Co.* v. *City of Chicago*, 88 id. 221; *Walker* v. *City of Springfield*, 94 id. 364; *Lovingston* v. *Board of Trustees*, 99 id. 564; *City of East St. Louis* v. *Trustees of Schools*, 102 id. 489; *Wiggins Ferry Co.* v. *City of East St. Louis*, 102 id. 560; *Timm* v. *Harrison*, 109 id. 593; *Braun* v. *City of Chicago*, 110 id. 186. Whether the exaction of a license fee is for either purpose, it is essential the ordinance providing for the license be so framed that it will have uniform operation as to the

class upon which it operates, for such is the positive requirement of said section 1 of article 9 of the constitution.

Counsel insist that the provisions of section 9 of article 9 of the constitution of 1870 are equally applicable to the power of the city to exact the payment of license fees, and that the requirement of the said latter section that municipal taxes shall be so laid that they shall be uniform in respect to both persons and property must be complied with in an ordinance enacted for the purpose of raising revenue through the medium of license fees. The ordinance under consideration levies a license fee upon each person pursuing the occupation of a broker, and requires that all such persons shall pay a uniform fee, without regard to the amount or value of the business transacted by the said brokers, or the capital they have, if any, invested in the business. The argument therefore is, the ordinance is not uniform in respect to persons and property, and for that reason is in contravention of said latter section of the constitution. We think said section 9 has reference only to taxes to be collected by assessments upon assessable property. Such was the view expressed by this court in *Walker* v. *City of Springfield, supra*. When revenue is sought to be raised by the imposition of license fees, the authority exercised is that given by the provisions of section 1 of article 9 of the constitution of 1870, and ·it is only necessary, in order to comply with the provisions of that section, that the ordinance shall be "uniform as to the class upon which it operates." The ordinance under consideration excuses no one of the class upon which it operates from the payment of the license fee, but exacts a uniform fee from each person in said class. It is uniform in respect to the persons affected, and more is not required by the constitution.

The judgment is affirmed.      *Judgment affirmed.*