Friedland v. Isenstein, 191 Ill. App. 109.

after a lessee has moved away from the premises is not sufficient as an acceptance of the premises and a surrender.

## Morris Friedland, Defendant in Error, v. Samuel Isenstein, Plaintiff in Error.

### Gen. No. 20,227.

1. BROKER, § 36*—*when broker entitled to compensation.* Evidence *held* to show that a person employed a real estate broker to sell certain property, that such broker in good faith undertook the employment and was the procuring cause of the sale, though not present when it was consummated, wherefore he was entitled to commissions.

2. BROKERS, § 5*—*when license necessary.* If an ordinance declares it to be unlawful for a person to act as a broker without a license, and prescribes a penalty for its violation, an unlicensed broker cannot recover commissions, even though the ordinance does not declare the contract of employment void.

3. BROKERS, § 5*—*when license sufficient.* Where a broker's license is issued to a partnership, and one of the partners succeeds to the business of the partnership upon dissolution of the firm and continues business individually at the same location, he is to be considered a licensed broker.

Error to the Municipal Court of Chicago; the Hon. JOSEPH SABATH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed January 5, 1915. Rehearing denied January 16, 1915.

GUSTAV E. BEERLY, for plaintiff in error; LEWIS RINAKER and ROY S. GASKILL, of counsel.

ROMAN G. LEWIS, for defendant in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Morris Friedland, plaintiff, on January 19, 1914, recovered a judgment for $1,000 against Samuel Isenstein, defendant, in the Municipal Court of Chicago, for commissions as a real estate broker. The defendant by this writ of error seeks to reverse the judgment. The cause was tried before the court without a jury.

The plaintiff in his statement of claim alleged in substance that, being a licensed real estate broker, he procured one B. Weinstein as a purchaser for defendant's property, situate at Nos. 3254-60 W. Madison street, Chicago, and that said property was sold to said Weinstein for a consideration of $40,000, and that he claimed a commission of $1,000, no part of which sum had been paid him. The defendant in his affidavit of merits alleged, in substance, that plaintiff was not the procuring cause of said sale, and that at the time the sale was made, in July, 1913, plaintiff was not a duly licensed real estate broker under the provisions of sections 192-198 of chapter 15 of the Revised Municipal Code of Chicago, and that defendant was not indebted to plaintiff in any sum.

On the trial, it was not disputed that in July, 1913, the defendant sold the property to Weinstein and received therefor, in cash and another piece of real estate, the equivalent of $40,000, but the evidence was conflicting as to whether or not plaintiff was the procuring cause of the sale. Plaintiff testified, in substance, that during the year 1913 he was in business as a real estate broker, with offices at No. 613 Ashland Block, Chicago, and was also an attorney at law; that prior to March 1, 1913, defendant listed with plaintiff several pieces of real estate for sale, including the property in question on West Madison street; that early in March plaintiff submitted the property in question to said Weinstein who expressed a willingness to consider purchasing same on a basis of part

Friedland v. Isenstein, 191 Ill. App. 109.

cash and exchanging a smaller piece of property owned
by him; that plaintiff shortly thereafter asked defend-
ant to call at his office, which the latter did, and plain-
tiff told defendant of his conversation with Weinstein,
and requested defendant to at once go with one Wein-
shenker and look at the smaller piece of property,
owned by Weinstein, which Weinstein had suggested
exchanging. Weinshenker testified that he was present
in plaintiff's office at the time, and that he and de-
fendant immediately went and viewed said Weinstein
property. Plaintiff further testified that he saw de-
fendant at the latter's house on the same evening and
they talked over terms of the proposed transfer, and
that defendant told plaintiff he would get $1,000 as
soon as the deal was completed; that shortly thereafter
plaintiff again called on Weinstein and informed him
of the terms on which defendant had said he was will-
ing to make the trade; that on March 10th he sent de-
fendant a registered letter (copy of letter and original
registry receipt were introduced in evidence) advis-
ing defendant that he had submitted defendant's prop-
erty to Weinstein and was negotiating with him; that
subsequently he continued his negotiations; and that
later, in July, 1913, he learned that the deal had been
consummated between the parties when he was not
present. The defendant, while he admitted that he
talked with plaintiff early in March regarding the sale
of the property in question and that plaintiff came to
his house occasionally during the months of May and
June, testified to the effect that one Goldberg, a real
estate broker, was the procuring cause of the sale and
that he paid Goldberg a commission. He denied ever
having agreed to pay plaintiff a commission of $1,000
when the deal was completed. He admitted being in
plaintiff's office early in March and going with Wein-
shenker to view certain property but stated that the
property they looked at was not the Weinstein prop-
erty, afterwards transferred to him in the consumma-

tion of the deal, but was another piece of property. Goldberg, a witness for defendant, testified that he first spoke to Weinstein about the Isenstein property in April, 1913 (which was subsequent to the time that plaintiff first presented the same to Weinstein), and that after the deal was consummated he received a commission of $300 from defendant, and also a further commission of $200 for subsequently selling for defendant the property received from Weinstein when the deal in question was consummated. Weinstein, a witness for defendant, testified that he first looked at the Isenstein property shortly after plaintiff first spoke to him about the same.

After careful examination of the testimony of the various witnesses, we cannot agree with the first contention of counsel for defendant, viz., that the finding and judgment are manifestly against the weight of the evidence. On the contrary we think that the evidence tends to show that the defendant employed the plaintiff to negotiate a sale of defendant's property valued at $40,000, that plaintiff in good faith undertook said employment and was instrumental in bringing defendant and Weinstein together, whereby the sale to Weinstein was afterwards made, and that, although plaintiff was not present when the sale was actually consummated, he was nevertheless the procuring cause of the sale. Under all the circumstances we think that he is entitled to the commissions claimed. *Hafner v. Herron,* 165 Ill. 242; *Henry v. Stewart,* 185 Ill. 448, 453; *Pridmore v. Wilson,* 159 Ill. App. 343, 346; *Gould v. Ricard Boiler & Engine Co.,* 136 Ill. App. 322, 331.

It is further urged by counsel for defendant that plaintiff cannot recover because he, individually, was not a duly licensed real estate broker during the year 1913, and at the times when the sale was being negotiated and when consummated. During the trial sections 192 to 198 inclusive, of chapter 15, of the Chicago Code of 1911, were introduced in evidence. Section

192 provides that it shall be unlawful for "any person or corporation" to engage in the business or act in the capacity of a broker, within the city, without first obtaining a license therefor, and that the written application for such license shall state "the name of the person or corporation and the location of the place or places of business for which such license is desired." Section 193 provides that if, after the issuance and delivery of a license, "any change shall be made in the place or places of business covered thereby no business shall be carried on in such new location until a notice shall have been given in writing to the city collector." Section 195 defines a real estate broker as "one who is engaged for others in negotiating contracts relative to real estate." Section 197 provides that any person "*employed* by a person or corporation licensed as a broker, who shall himself engage in the business or act in the capacity of a broker," shall be required to take out a license. Section 198 provides for a penalty by fine for "any person or corporation violating any of the provisions of this chapter." There was also introduced in evidence a license of the city of Chicago, signed by the mayor and attested by the city clerk, dated January 2, 1913, and expiring December 31, 1913, by which "permission is hereby given *Fox & Friedland* to conduct the business of General Broker at No. 613 Ashland Blk., in said City, * * * subject to the Ordinances of said City." The evidence also showed that plaintiff, during January, 1913, and prior thereto, was in partnership with a man named Fox, under the firm name of Fox & Friedland; that the firm was engaged in business as brokers, with offices at No. 613 Ashland Block, Chicago; that said copartnership was dissolved on February 1, 1913, and that thereafter plaintiff alone continued said brokerage business at the same place; and that after said dissolution plaintiff obtained no other license during the year 1913, but continued to act as a real estate broker under said

license so issued to said firm. It is the law that if a statute or ordinance declares it to be unlawful for a person to act as a broker without a license and prescribes a penalty for its violation, an unlicensed broker cannot recover upon the contract for commissions, even though the statute or ordinance does not, in terms, declare the contract void. *Douthart v. Congdon,* 197 Ill. 349, 353.

It is contended by counsel for defendant that where a broker's license is issued, under the provisions of said chapter 15 of the Chicago Code of 1911, to a partnership in the firm name for the conducting of a brokerage business at a particular place, and one of the partners succeeds to the business of the partnership upon dissolution of the firm and continues that business individually at the same location, but does not take out a new license in his individual name, the latter cannot recover commissions for services rendered as broker after said dissolution and before the expiration of said license so issued to said firm. We are of the opinion that under such circumstances such broker is to be considered as a licensed broker under the provisions of said Chicago Code of 1911. Our attention has not been directed by counsel to any Illinois case where the question has been considered. In the case of *City of St. Charles v. Hackman,* 133 Mo. 634, it appeared that the ordinance of the City of St. Charles provided that: "No person, firm, corporation or association of persons" shall open or keep a meat shop or market place in said city without having first obtained a license, for which the sum of $50 per year shall be paid; that any "person" violating the provisions of the section shall be deemed guilty of a misdemeanor and upon conviction shall be fined; and that every such license shall contain the name of the "person" in whose favor it is issued, and "shall designate the location where the business is to be carried on, which location shall not be changed without the consent of the

mayor endorsed on such license, but such license shall not be transferable or used for the benefit of any person other than the one to whom it shall have been issued." It further appeared that a license to keep a meat shop for one year at a location named was issued on June 6, 1892, to Langstadt & Hackman, who then were copartners; that on August 19 Langstadt retired and the partnership was dissolved; that Hackman then carried on the meat shop at the same place until June 6, 1893, without taking out a new license in his own name, and that action was brought against him for an alleged breach of the ordinance. The court *held* that the firm license was a sufficient license for Hackman to conduct the business at the same location after said dissolution, saying (p. 643): "Looking at the purpose of the tax and the terms of this ordinance it would seem that a license to two persons to carry on a certain business for a year at a certain place should naturally be interpreted to include the right of one of them to so carry on that business. A license to a firm of two would ordinarily be understood to be a license to one of the firm, on the general principle that the greater includes the less." See also *United States v. Glab,* 99 U. S. 225; *Spielman v. State of Maryland,* 27 Md. 520; *Hinckley v. Germania Fire Ins. Co.,* 140 Mass. 38; *United States v. Davis,* 37 Fed. 468.

The judgment of the Municipal Court is affirmed.

*Affirmed.*