### RHEINBERGER v. SECURITY LIFE INS. CO. OF AMERICA.

### ZWIKEL v. NERLOVE.

#### No. 11683.

District Court, N. D. Illinois, E. D.
Oct. 9, 1942.

William H. Haight, Edmund D. Adcock, and Lewis A. Stebbins, all of Chicago, Ill., for plaintiff.

Casses, Potter & Bentley, Poppenhusen, Johnston, Thompson & Raymond, O. D. Buckles, and Thomas J. Courtney, State's Atty., all of Chicago, Ill., for defendant.

Lytton & Olson, of Chicago, Ill., for receiver.

LINDLEY, District Judge.

Claimant has filed a claim against the trustee for the Security Life Insurance Company to recover commissions allegedly owing him for the leasing of a certain trust asset known as the Lumber Street property. In response to an advertisement by the George Lurie Company, claimant, a real estate broker, contacted that company, and discussed numerous properties that it was then offering, including that involved here. Following this, claimant showed one Marwick the premises, and arranged a meeting with the trustee on October 29, 1940, when a sale of the property was discussed. The parties failed to reach any agreement.

The testimony is somewhat conflicting as to the purpose of the conference, claim-

ant alleging that his buyer was both a potential prospective purchaser and lessee. The testimony of Marwick, the trustee, and another indicates, however, that the question of leasing was not mentioned and that Marwick was only a prospective purchaser. There was some discussion of a sale being made on the basis of rental payments, but no agreement was reached.

Shortly later, claimant wrote to the trustee that he hoped to make a definite proposal soon. That was the only communication emanating from him until April 4, 1941. Claimant had one or two conversations with Marwick shortly after the conference of October 29 but since he had nothing satisfactory to offer, Marwick thereafter treated the negotiations as ended. Schlaes, representing the Lurie Company, twice called claimant in November, when the latter said he had nothing to offer and indicated that the negotiations were at an end. Claimant made no further move until April, 1941, when he learned of a lease having been made shortly earlier between the trustee and Marwick. He then wrote respondent, demanding a commission.

On February 23, 1941, Marwick advertised in the Chicago Tribune seeking to lease industrial property. In response, Neuberg, a real estate broker connected with the Lurie Company, talked to Marwick, and when certain property suggested by Neuberg proved unsatisfactory to the latter, he mentioned the Lumber Street property. Negotiations were begun and the property was eventually leased to Marwick for ten years, with a rental of $10,000 a year. Neuberg received a commission for bringing about consummation of the lease. Claimant now insists that he is entitled to the commission since he was the person who originally brought the parties together.

■■ The fact that the seller or another broker consummates a sale, or that it is made upon terms different from those proposed to the broker, does not necessarily deprive the latter of compensation. If it appears that the purchaser was induced to apply to the owner through the instrumentality of the broker or through means employed by him or that the sale was effected through information derived from the broker, the broker is entitled to his commission, although the sale was consummated and the deal closed finally by the owner. Ogren v. Sundell, 1921, 220 Ill. App. 584; Hafner v. Herron, 1911, 165 Ill. 242, 46 N.E. 211; Rounds v. Victoria Hotel Co., 1914, 184 Ill.App. 500, 501.

■ But that a sale or lease is finally brought about through the efforts of the principal or another broker with a person with whom the first broker had previously negotiated without success, does not furnish basis for commission to the first broker, if it appears that the latter has for a long time ceased negotiation with the purchaser and abandoned all efforts to induce him to take the property. Lipe v. Ludewick, 1883, 14 Ill.App. 372; Davis v. Gassette, 1888, 30 Ill.App. 41; Carlson v. Nathan, 1891, 43 Ill.App. 364; West End Dry Goods Store v. Maun, 1907, 133 Ill. App. 544; Savage v. Stewart, 1922, 226 Ill.App. 388; Sheppard v. Cade, 1922, 227 Ill.App. 110.

The question presented then is whether, on the basis of the facts presented, there was an abandonment of the transaction by claimant so as to preclude his recovery of compensation for bringing the parties together. If, in the meeting in October, 1940, a lease had been made between Marwick and the trustee, claimant would probably have been entitled to a commission, even though his purpose in bringing the parties together was to arrange for a sale. Davis v. Gassette, 1888, 30 Ill.App. 41, 44. However, there was a lapse of approximately four months before the lease between the parties was made, with Neuberg acting as broker. Was there an abandonment of the negotiations by claimant during this time?

Careful examination of the testimony is convincing that all parties treated the negotiations as abandoned. Claimant's actions after the first month indicate strongly that he had lost all hope of consummating a sale. He had written trustee once after the meeting, stating merely that he hoped to arrange a satisfactory offer. Yet at no time after that did he communicate with the trustee in an attempt to arrive at a satisfactory arrangement between the parties. There was some evidence that claimant had attempted to see the trustee in December and January, but there is nothing to show that claimant made any effort to follow up these unsuccessful attempts either personally or by mail.

Claimant had some conversation with Marwick and Schlaes shortly after the meeting in October, but after that did not talk with them or make any attempt to

arrive at terms for either a sale or lease. The trustee, Marwick, and Schlaes stated that they considered the negotiations with claimant at an end. This conclusion is strongly supported by the fact that the lease was consummated as a result of Marwick's voluntary advertising for rental property in February, 1941.

The evidence does not show that Marwick was induced to make the lease through claimant's actions. All parties treated the negotiations as at an end. Nothing indicates that if Marwick had not advertised for space and Neuberg had not met him and mentioned the Lumber Street property, the lease would have been made. The length of time following claimant's last attempts to negotiate between the two parties, and the latter's subsequent inactivity, show clearly that claimant was not the procuring broker, and that he is, therefore, entitled to no commission. Murawska v. Boeger, 1921, 219 Ill.App. 241; Watts v. Howard & Calkins, 1893, 51 Ill.App. 243; West End Dry Goods Store v. Maun, 1907, 133 Ill.App. 544; Savage v. Stewart, 1922, 226 Ill.App. 388; Obrien & Co. v. Newhouse, 1916, 196 Ill.App. 39.

In Lipe v. Ludewick, 1883, 14 Ill.App. 372, the parties could not agree on terms, and, for a period of six months, negotiations ceased, with the broker making no effort to complete the sale. After six months, the buyer happened to meet the seller, and they arranged for a sale on different terms. The court held that the broker had abandoned the negotiations.

In West End Dry Goods Store v. Maun, 1907, 133 Ill.App. 544 a broker arranged a meeting between the principals. The parties could not agree and, after some effort by the broker to produce a satisfactory offer, nothing was done for six months, when the parties got together without the aid of the broker and agreed. There was evidence that, shortly prior to the signing of the lease, the seller saw the broker, asked if his principal would rent the property, and received the reply, "They might take it, but I don't think we can do business with you at all." The court held the negotiations abandoned.

In Davis v. Gassette, 1888, 30 Ill.App. 41 the broker sought to negotiate a sale between buyer and seller. The parties failed to agree and for more than a year nothing further was done. Then, another broker, hearing that the seller was seeking to trade his property, arranged a meeting with the would-be buyer in the first negotiation and arranged an exchange. The court held the first broker entitled to no compensation, even though he had originally brought the parties together, since there had been an abandonment of negotiations.

In a New York case, Wylie v. Marine Nat. Bank, 61 N.Y. 415, 416, there was a lapse of only six or seven days between the dropping of negotiations and the execution of a new contract. This case was cited with approval in the Lipe case. In Carlson v. Nathan, 1891, 43 Ill.App. 364, only a month had elapsed between the time the broker had abandoned negotiations and the original parties again met, through their banker, and negotiated a trade of properties. In both cases the court denied the broker's claims for compensation.

The cases cited by claimant seem hardly in point.

In Barton v. Rogers, 1899, 84 Ill.App. 49, the broker brought the two parties together to make a trade, and the terms were settled in the presence of the broker. One party, however, needed $400 to make the trade, and the broker tried to get it and failed. The other party notified the broker that, since he could not get the money, the deal was off. Later the exchange was consummated by another broker, who raised the money. The court held the first broker entitled to a commission, since there was nothing in his arrangement with his principal which required him to procure the $400. The court felt that one of the parties could not arbitrarily dismiss the procuring broker, and thereby relieve himself of paying a commission.

In Ogren v. Sundell, 1921, 220 Ill.App. 584, the broker initiated negotiations and the parties failed to agree on a satisfactory price. Later the broker told the prospective buyer to see the seller again, that perhaps better terms could be arranged. Nothing was done for about a month, when the parties again met, through the intervention of a third person, and a sale was consummated on different terms. The court held that whether there was abandonment was a question for the jury and that the fact that the seller completed the sale, or that it was made on different terms, constituted no reason for depriving a broker of his commissions. The principal ground for reversing the trial court, which had found in favor of the vendor, was

improper instructions and not that there was no abandonment.

In Gould v. Ricard B. & E. Co., 1907, 136 Ill.App. 322 plaintiff sought commissions for a sale. He had approached the buyer and after some negotiations arrived at a price satisfactory to both parties. The seller then told plaintiff that, although the negotiations had been completed, he might have to return to see the buyer at the time of closing the contract. Subsequently the vendor made the contract with the buyer, with only unimportant alterations. Although plaintiff was working on another contract at the time, the court found that there was no abandonment and plaintiff was entitled to a commission. Obviously neither seller nor plaintiff treated the negotiations as abandoned.

In Friedland v. Isenstein, 1915, 191 Ill. App. 109, the court permitted the broker to recover a commission, believing that he was the procuring party, even though the sale was consummated subsequently out of his presence. The facts are not clear, but it seems that the broker was actively trying to procure consummation until a very short time before the actual sale was made. Seemingly there was no evidence of abandonment of negotiations.

In Hessling v. Frey, 1913, 182 Ill.App. 547, a memorandum opinion, the court merely held that where a broker is the procuring party, he is entitled to a commission even though the sale is made at a price different from that listed with the broker.

■ The claim must fail for another reason. The Municipal Code of Chicago provides in Chapter 113, section 23, that: "It shall be unlawful for any person to engage in the business of or to act in the capacity of a real estate broker without first having obtained a license so to do." Chapter 113, section 29 provides that: "No person shall pay any commission or other compensation to any person for negotiating contracts of real estate other than to real estate brokers licensed under this chapter."

Although claimant had a state license for 1940, he did not comply with the Municipal Code until October 1941. Negotiations for the sale of the property were instituted by claimant as a broker in October, 1940, and the lease, under which claimant seeks his alleged commission, was consummated more than six months before he obtained a city license.

■ The ordinance is valid. Braun v. Chicago, 1884, 110 Ill. 186; Banta v. Chicago, 1898, 172 Ill. 204, 50 N.E. 233, 40 L.R.A. 611; Douthart v. Congdon, 1902, 197 Ill. 349. And a person who does not have a license as required by the ordinance at the time the transaction is opened and consummated cannot collect a commission. Douthart v. Congdon, 1902, 197 Ill. 349, 64 N.E. 348, 90 Am.St.Rep. 167; Hendricks v. Richardson, 1924, 233 Ill.App. 130, Kirk v. Henry M. Rich & Co., 1910, 156 Ill.App. 483; Friedland v. Isenstein, 1915, 191 Ill. App. 109; Cutler v. Pardridge, 1913, 182 Ill.App. 350; Weinshenker v. Epstein, 1912, 176 Ill.App. 104. See 30 A.L.R. 838; 42 A.L.R. 1229.

Claimant insists, however, that he falls without the scope of these decisions and relies upon Marcinkevich v. Wilson, 1913, 183 Ill.App. 147 and Crilly v. Young, 1909, 152 Ill.App. 72. In the Marcinkevich case the court held merely that a person not a broker does not come within the ordinance. In the Crilly case the court's primary reason for permitting compensation to the broker was that he procured a license before the contract between the parties was consummated, there being only an unenforceable oral contract made when the broker had no license. Here the transaction had been completed long before claimant had a license.

■ Claimant contends that it is unconscionable to deny him compensation because he had no license. He argues that, as he was employed by another broker, he did not need a license. Clearly, however, claimant was an independent broker and was not acting for someone else in carrying on the negotiations in this case, and thus could invoke no protection through another's license.

■ Further, claimant suggests that although he received the license in October, 1941, it was good for the whole year and so, retroactively, protected his acts earlier in the year. Unfortunately, however, claimant's argument is not supported by the Illinois decisions. Thus in Kirk v. Henry M. Rich and Company, 1910, 156 Ill.App. 483, a broker sought commissions for procuring a tenant. His services were rendered in September and October, ending on October 26. On October 30, the broker obtained a license. The court said at page 485 of 156 Ill.App.: "The services of plaintiff were rendered before he obtained a license. It is immaterial that after

the services were rendered and before the lease was executed, he took out a license. Plaintiff [the broker] performed his part of his contract with defendant when he procured a person willing and able to accept a lease on the terms offered by the defendant, but his acts in the performance of the contract being unlawful, they cannot be the basis of a recovery. The license took effect from the date it was issued and cannot be given a retroactive effect so as to make valid acts of the plaintiff done between May 1 and October· 30, 1907." To the same effect is Hendricks v. Richardson, 1924, 233 Ill.App. 130.

Under Chapter 113, section 29 of the Municipal Ordinance, the trustee is forbidden to pay claimant a commission. Under that section no person shall pay any commission to any person for negotiating contracts of real estate other than brokers licensed under the ordinance. This court cannot direct the trustee to commit an illegal act.

I conclude that claimant is not entitled to any commission because, first, it is clear that there was an abandonment of negotiations begun by him, and, second, because under the Municipal Ordinance he was an unlicensed broker.