Lawrence et al. v. Atwood.

MARVIN A. LAWRENCE ET AL.

v.

ORVILLE E. ATWOOD.

COMMISSIONS OF BROKER—CHANGE IN TERMS OF SALE.—The commissions of a broker for the sale of real estate are due when he has found a pur-

chaser who buys the property, and his right to such commissions is not affected by a modification or change of the terms of payment, made between the buyer and seller, different from the terms first given by the seller to the broker.

APPEAL from the Superior Court of Cook county, the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. F. W. S. BRAWLEY, for appellants; as to the right of a broker to receive his commissions when he has found a purchaser who buys the property, cited Coleman's Heirs v. Meade, 5 Central Law Journal, 409; McGavock v. Woodfield, 20 How. (S. C.) 221; Rice v. Mayor, 107 Mass. 550; Chapin v. Bridges, 116 Mass. 105; Gluntworth v. Luther, 21 Barb. 148; Short v. Millard, 68 Ill. 292; Doty v. Miller, 43 Barb. 529; Middletown v. Findla, 25 Cal. 76; Chilton v. Butler, 1 E. D. Smith, 150; Morgan v. Maxon, 4 E. D. Smith, 626; Clapp v. Hughes, 1 Phil. 382; Barnard v. Monnot, 34 Barb. 90; Kock v. Emmerling, 22 How. 69; Bailey v. Chapman, 41 Mo. 536; Carter v. Webster, 79 Ill. 435; Mooney v. Elder, 56 N. Y. 238; Wharton on Agency, § 328.

Mr. W. H. HOLDEN and Mr. J. J. KNICKERBOCKER, for appellee; contended that insolvency of the purchaser is a good defense, and cited Hart v. Hoffman, 44 How. Pr. 168.

That the commissions were to be paid from the sum obtained: Bull v. Price, 20 Eng. Com. L. 113; Briggs v. Rowe, 1 N. Y. Ct. of App. 189.

That the broker must find a *sufficient* purchaser: McClare v. Paine, 49 N. Y. 563; Barnard v. Monnott, 42 N. Y. 204; Fraser v. Wyckoff, 63 N. Y. 448.

That the judgment ought not to be reversed, even though it appear to be against the weight of the testimony, because the finding of the court is equivalent to the verdict of a jury: Lowry v. Orr, 1 Gilm. 70; Bloom v. Crane, 24 Ill. 48; Jenkins v. Brush, 3 Gilm. 18; Sullivan v. Dollins, 13 Ill. 85; Roney v. Monaghan, 3 Gilm. 85; Chase v. Debolt, 2 Gilm. 371; Boyle v. Levings, 24 Ill. 223; Clement v. Bushway, 25 Ill. 200; Ambs v. Honore, 24 Ill. 122; Eastman v. Brown, 32 Ill. 53;

Weaver v. Crocker, 49 Ill. 461; Toledo, W. & W. R. R. Co. v. Elliott, 76 Ill. 67.

PLEASANTS, J.   This was an action of assumpsit upon the common counts, brought by appellants, to recover commissions claimed to be due from appellee for services as brokers in finding a purchaser of his farm.

The Superior Court, upon a trial without a jury, found the issue for the defendant, overruled a motion for a new trial, and entered judgment against the plaintiffs for costs; from which judgment they appealed, and here assign for error, that the findings were against the law and the evidence.

Both of the averments, upon proof of which their right to recover depends, were controverted, viz: The making of the contract between the parties, and its performance on the part of the plaintiffs.

It appears that the defendant, desiring to sell, applied to Messrs. Phare and Dietrich, brokers, of Chicago, to find a purchaser, and that at their office, in the summer of 1873, Phare introduced the plaintiff Lawrence to the defendant, who there pointed out to him the property on a map, and after some conversation respecting it, which Phare did not hear, went out with him.

Lawrence testifies that at this interview the defendant gave him the price per acre, $250.00, and the terms of payment, one-third or at least one-fourth of the whole amount, less an incumbrance of $12,000 which the purchaser was to assume, in cash, and the residue in equal installments, with interest at one and two years, respectively, and promised to pay if he found a purchaser, a commission of two and one-half per centum.

It further appears that Lawrence made efforts to effect a sale, in the course of which he brought the property and terms to the attention of Messrs. Kerr, Davison and Welch, who were also doing business as real estate brokers in Chicago; that Kerr called on defendant with a view to purchase for himself and others, and upon an alleged misunderstanding as to the property offered declined to take it, but shortly afterwards arranged for a sale with Henry Crawford whom he introduced to defend-

ant, and which, after some negotiations between them was consummated on the 19th of August, 1873, for the price originally proposed, but with a modification of the terms of payment.

On that day the defendant executed his deed to Crawford for $44,750, including the incumbrance which was assumed as a part of the consideration, and Crawford paid him $1,000 in cash, and gave his notes for the residue, in three equal installments—one at ninety days, and the others at one and two years, respectively, and also other notes for the interest on the three so given, from date to maturity, and a deed of trust of the same premises to secure them. Failing, however, to meet the first when due, he re-conveyed the property, and his notes were cancelled. Lawrence swears that by the agreement between them, defendant was to pay one-third of the commissions to Phare & Dietrich directly, on the consummation of the sale, and the other two-thirds to him, of which he was to pay one-half to Kerr, Davison & Welch—thus distributing the whole amount equally among the three brokers employed in effecting the sale, according to a custom recognized by them. He claims in this suit only the two-thirds. Defendant positively denies that he ever promised the plaintiff to pay him any commissions, or dealt with him at all as a broker. He says that Lawrence was introduced to him as a person " who was dealing in land largely," and was understood by him as " buying the property, or talking of investing in it himself;" that he said nothing about taking it to sell for him, and that no conversation in relation to commissions was had between them until after the trade was made.

He claims that he employed Phare & Dietrich only, and that if any commission had been earned he would be liable therefor to them alone; but further claims that commissions were not to be due until the cash payment of one-third the price was fully made, and that it never was so made.

The question then is, on which side, if either, and how great, if any, is the preponderance. To corroborate the statements of the defendant or of any of them on this point—the making of a contract with plaintiff—we find no evidence or circumstance

Lawrence et al. v. Atwood.

in all the record; while those of the plaintiff appear to us to be strongly supported by the testimony of disinterested and even of adverse witnesses. Thus his active agency in the matter of procuring a purchaser, and defendant's actual knowledge of it at the time, are shown by Welch and by the defendant himself. The former testifies that the property was brought to the attention of his firm by the plaintiff, and the latter that when Kerr came to see him, after the property was pointed out, he declined to take it, because, as he said, it was not the property that Lawrence gave him, and thereupon "Lawrence was sent for, and they had a dispute about it;" and further, that after that, "Lawrence, Phare and Kerr all talked the property up."

So the repeated recognition by the defendant of plaintiffs' right to participate equally with the two other firms, in the commissions to be paid, is proved by the testimony of Welch. The defendant also distinctly admitted it on the witness stand, and the receipt which he took from William H. Phare and offered in evidence recites it. He further stated that he had actually offered to Lawrence to pay him his share out of a check of Crawford, if he would cash it, although he says this offer was accompanied with the declaration that no commissions were due him, but whether because there was no contract or no performance, does not appear. We regard the inference from these collateral facts as irresistible, that plaintiff Lawrence was employed as a broker in this matter, either by the defendant or by Phare and Deitrich with his knowledge and approval, and probably by both; but if by either it is sufficient. We further regard it as fully proved that the commissions were to be two and one-half per céntum; and whether the whole or only two-thirds or one-third was to be paid by defendant to plaintiffs is unnecessary here to determine, since the declaration was upon the *indebitatus* counts, and if either was promised and the plaintiffs performed their part the finding and judgment of the Superior Court was erroneous.

Upon the other issue there is no dispute about the facts; the only question being whether they constitute performance by the plaintiffs of their contract to find a purchaser.

As a means to that end they employed another broker, and

he procured and introduced as such a party who was so accepted by the defendant and consummated the purchase, but upon terms differing in some particulars from those first offered; that is, instead of paying down in cash $10,916.66, and giving two notes for the same amount each, at one and two years, with interest, he paid down $1,000, and gave three notes for $10,-584, $10,583 and $10,583, at ninety days, one year and two years, respectively, with interest. Thus, although a portion of the proposed cash payment was deferred, it was but for a short time, and the proposed deferred payments were somewhat lessened. The change was not substantial. It was not effected by any agency or neglect of the plaintiffs, but by negotiations to which defendant was an immediate and principal party, and was by him freely consented to.

Such a change so effected should not, in our opinion, be held to defeat the claim of the broker for his commissions. Nor should the failure of the purchaser to pay the ninety-day note at maturity, and the consequent cancellation of the purchase by agreement of the parties to it, have that effect. He was none the less a purchaser within the meaning of the contract with plaintiffs. His purchase was in no degree contingent or provisional. An absolute deed was executed to him, which conveyed the entire title, and for so much of the consideration originally required as he did not pay in money he made and executed and delivered to the defendant enforceable contracts and securities of the character originally contemplated and to his acceptance and satisfaction at the time.

There is no pretense of fraud, misrepresentation or negligence on the part of the plaintiffs, or of the purchaser.

They were not guarantors of his ability to make any deferred payment, nor could their right to commissions be affected by the want of it—since he was accepted by the defendant, complied with all the terms required to consummate the purchase, and did actually consummate it. This question of ability, as affecting the broker's right in a case free from fraud, can only arise when the proposed purchaser is rejected notwithstanding his offer and readiness to comply with such terms and thus to consummate the purchase.

Lawrence et al. v. Atwood.

Here the defendant might have insisted upon the cash for one-third of the price, according to the terms given to the broker, and compelled its payment, or refused to sell, and so have clearly avoided all liability for commissions; or, distrusting Crawford's ability to make the deferred payments notwithstanding his offer and readiness to comply with all the terms to be presently fulfilled, he might have rejected him on that ground, and in that case have defended against the claims for commissions by making proofs sufficient to overcome the legal presumption of ability; but he did neither. He consented at the instance of the purchaser to some modification of the terms he had submitted—not however making a substantially different contract, as in some of the cases cited—and fully completed the sale accordingly.

Thereupon the broker became entitled to his commissions, unless his right was postponed by special agreement: McGavock v. Woodfield, 20 How. 221; Coleman's Heirs v. Meade; 5 Cent. Law Jour. 409; Wharton on Agency, Sec. 328; Bernard v. Monnott, 42 N. Y. 204; Frazer v. Wyckoff, 63 N. Y. 448; Carter v. Webster, 79 Ill. 436.

The defendant claimed that it was postponed until, and made contingent upon, the full payment of the ninety day note. All the proof offered by him on this point was his own statement that such was his agreement with Phare & Dietrich, and a receipt from Phare containing a recital to the same effect. But such an agreement could not affect the rights of plaintiffs, who were strangers to it, and the admission of any evidence of it against their objection was therefore improper.

It is clear that commissions were to be due when a purchaser should be found, which would certainly be when the purchase should be made. This was satisfactory to the defendant, because the terms of sale originally proposed contemplated that one-third or one-fourth of the price would then be paid. But the ninety day note with the $1,000 cash paid, would amount to more than one-third of the whole price after deducting the incumbrance which was assumed. It does not appear that plaintiffs had any notice or suspicion of the change in the terms until after it was made and the sale was consum-

mated; and we discover no evidence of any consent on their part afterwards to the further postponement and contingency of their claim to accord with these changes in the terms of sale. We are of opinion, then, that the fact of performance of the contract on the part of plaintiffs was also clearly established, and like that of the contract made, by so great a preponderance of evidence as to make the finding of the issue against them error; for which we reverse the judgment entered thereon and remand the cause.

Judgment reversed and cause remanded.