## William Loehde and Charles A. Hutchinson v. Edward A. Halsey.

1. JURY—*Province to Pass upon the Weight of the Evidence.*—Where the question presented by the instruction of the court is whether the evidence tended to prove the plaintiff's case, if the evidence so tended, the case should have been submitted to the jury, whose province it is to pass upon the weight of the evidence.

2. RECORDS—*Constructive Notice to Creditors and Subsequent Purchasers Only.*—The record of deeds is constructive notice to creditors and subsequent purchasers only.

3. PRINCIPAL AND AGENT—*Where an Agent is Personally Liable as Principal.*—Where an agent contracts as principal and does not disclose his agency, he is personally liable as principal.

4. BROKERS—*Commissions, Where the Owner Sells at a Price Different from that Given to the Broker.*—If a broker procures a purchaser ready, willing and able to purchase, and brings such purchaser and the owner together, and the owner sells to the purchaser at a price different from that given by the owner to the broker, the owner can not escape payment of commission by reason of the change in price.

Assumpsit, for commissions. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed May 10, 1900.

FRED H. ATWOOD and FRANK B. PEASE, attorneys for appellants.

IRA J. GEER, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This was an action by appellants against appellee for commissions claimed to be due to the former from the latter on a sale of real property. The court instructed the jury peremptorily to find the issues for the defendants, which the jury did, and judgment was rendered against appellants. The question presented by the instruction of the court is whether the evidence tended to prove the plaintiff's case. If so, the case should have been submitted to the jury, whose province it was to pass on the weight of the evidence. Corbin v. West. Elec. Co., 78 Ill. App. 516, and cases cited, p. 525; Dallemand v. Saalfeldt, 73 Ib. 151, and cases cited, p. 153; L. N. A. & C. Ry. Co. v. Patchen, 167 Ill. 204, 214; Siddall v. Jansen, 168 Ib. 43.

The same rule has been announced in a number of other cases, and may be regarded as thoroughly settled.

The appellants are real estate brokers, and appellant Charles A. Hutchinson testified that in the years 1894 and 1895 he was associated in the real estate business with appellant William Loehde; that he had a conversation with appellee in the spring of 1894 in a street car, and said to

appellee, "I see you have some houses and lots for sale in your Woodlands subdivision up on Halsted, George and Oakdale avenue;" that appellee said "yes," when appellant asked him if he would allow them commission if they would sell some of them; that they were up there in the vicinity; that appellee said he would be glad to have them do so, and that he would make a plat for them, giving the prices of the lots for sale, and a description and prices of the houses for sale, and that he would pay a commission; that subsequently appellants received from appellee the following letter, inclosing a plat:

"CHICAGO, February 6, 1894.
MESSRS. LOEHDE & HUTCHINSON,
    556 Sheffield avenue, City.
    GENTLEMEN: In answer to the inquiry of your Mr. Hutchinson as to the houses we have for sale on Wellington and Oakdale avenues, just west of Halsted street, we send you herewith a description of the houses. (Here follows description of houses and agreement to pay commission of $100 a house.) We have vacant lots on Oakdale avenue and Wellington avenue at $120 a foot; on George street at $100 a foot; on Halsted street at $125 a foot. We can pay you a commission of 2½ per cent on any sales you make of vacant property for us. We send you a plat of the property. The property is well built up, there being now about thirty good brick and stone houses on the ten acres of the 'Woodlands' subdivision. No frame houses are allowed in the subdivision, and no house can be built which costs less than $4,000. There is a building line of twenty feet on the east and west streets. We shall be glad to have you try to sell this property. However, we do not wish you to put a sign on it, as we have our own signs up.
                Yours truly,
                    HALSEY & HALSEY."

The plat inclosed in the letter shows a subdivision consisting of blocks and lots, and the prices of lots for sale are written in ink on the margin of the plat. Among the lots so marked is one on the northeast corner of Oakland Place and Oakdale avenue, which is the lot in question, and the price of it is marked on the plat $125 per foot.

The witness Hutchinson further testified that on receiving the plat, appellants immediately listed the property on

their books and exerted efforts to sell it; that in the spring of 1895, appellants had an inquiry about vacant property from Mr. Ohlhorst; that they submitted to him the corner lot in question; that he seemed much pleased with the subdivision; that the only price appellants could give him was $125 per foot; that he offered $100 per foot and that they then wrote to Halsey the following letter:

" Chicago, Ill., May 20, 1895.

Messrs. Halsey & Company:

Gentlemen: We have an offer of $100 per front foot for the corner of Oakdale avenue and Oakland Place. Can you accept this offer? *All cash.* Please let us hear from you.

Respectfully,

Loehde & Hutchinson.

Appellee did business under the name " Halsey and Halsey."

Hutchinson further testified that appellants received no answer to the last letter; that they called at appellee's office several times, but failed to see him, and that finally Mr. Ohlhorst became impatient and inquired whether there would be anything wrong in his going to see Halsey, when they said no, and gave him Halsey's address. Appellant Loehde testified substantially as did Hutchinson, and further testified that it was in the afternoon of May 31st when Ohlhorst went to see appellee; that he, Loehde, did not see Ohlhorst again for several days, but when he met him, Ohlhorst told him that he met appellee the first time he went to his office, and purchased the lot from him for $3,500, paying $700 down to bind the bargain.

It appears from appellee's testimony that Ohlhorst agreed orally to purchase the lot from him May 31, 1895, for $3,500, and signed a contract of purchase June 1, 1895. July 18, 1895, appellants wrote to appellee, stating that they had received no answer to their letter of May 20th, but that Mr. Ohlhorst, their customer, had informed them that he had purchased the lot from him and demanding commissions. To this letter appellee responded July 19, 1895, in quite a lengthy letter, expressing surprise and refusing to pay appel-

lants commissions, on the ground that they had never mentioned Ohlhorst's name to him.    Loehde further testified that the commission due at the rate of two and one half per cent with interest was $103.16, produced and put in evidence a city real estate broker's license of date May 31, 1895, to appellants, and running to May 1, 1896, and testified that they had a license for the year 1894, running to May 1, 1895, but had lost it, and a certificate of the city clerk was put in evidence showing a license issued to appellants August 9, 1894.

Mr. Ohlhorst testified that appellants first called his attention to the property and gave him appellee's address. He fully corroborates the testimony of appellants as to what occurred between him and them, and says that when he asked appellee the price of the lot he told him $135 per foot; that he told appellee that Loehde and Hutchinson had offered it to him for $125 a foot, when appellee inquired, " Are you the man who made the offer of $100 a foot?" and witness said yes.    The deed of the lot is dated June 1, 1895, and the consideration recited, and which the evidence shows to have been the true consideration, is $3,500.    It appears from the evidence that Jarvis & Conklin were the owners of the subdivision in which the lot in question is, until September 25, 1894, and that appellee was their agent in respect to the property until the last mentioned date, when they conveyed the property to John Keene, Jr. After the sale to Keene appellee handled the property for Keene.    March 29, 1895, Keene conveyed the property to W. North Duane.    After the conveyance to Duane appellee was authorized by Duane to sell the property, and he made the sale to Ohlhorst as Duane's agent.    On these premises appellee's counsel argue that appellee having ceased to be the agent of Jarvis & Conklin upon the conveyance of the property by them to Keene September 25, 1894, months after he authorized appellants to sell the property, their agency terminated and they were no longer authorized to act.    The argument proceeds on the hypothesis that appellants dealt with Halsey as an agent; that they knew him

to be such, and not the owner.    There is no evidence to sustain this hypothesis.    The evidence tends to prove the contrary.    The conversation between Hutchinson and Halsey on the street car, in which Hutchinson said to appellee, " I see you have some houses and lots for sale in your Woodlands subdivision," etc., to which appellee answered, " Yes," would indicate that Hutchinson considered appellee the owner, and there is nothing in appellee's letter of February 6, 1894, which indicates the contrary.    In that letter appellee writes:    " We have vacant lots on Oakland avenue," etc.    " We can pay you a commission of two and one-half per cent," etc.

Counsel for appellee seems to rely on the record of the deeds from Jarvis & Conklin to Keene and from Keene to Duane as constructive notice of ownership and change of ownership, and consequently of notice that appellee was an agent, and not the owner; but the record is constructive notice to creditors and subsequent purchasers only.    1 S. & C. Stat., C. 30, parag. 31.

So far as appears from the record, appellee contracted as principal, and did not disclose his agency.    In such case, an agent is personally liable as principal.    Mechem on Agency, Sec. 554; Wheeler v. Reed, 36 Ill. 82, 89; Bickford v. First Nat'l Bank, 42 Ill. 238, 245.

In Wheeler v. Reed, *supra*, the court cite approvingly Mills v. Hunt, 20 Wend. 433, and say:

" And the court further held, even when he discloses the name of his principal, if he signs a written contract in his own name merely, which does not show upon its face that he was acting as the agent of another, or in an official capacity for the government, he will be personally bound thereby."

In the present case there was nothing extraordinary or inconsistent in the appellee employing appellants in his own name and agreeing to pay them two and a half per cent commission in the event of a sale.    He testified that by agreement he received seven per cent on the sale.    Under such agreement he could well afford to pay two and a half per cent to procure a purchaser.

Appellee's counsel urges that appellants did not disclose the name of their customer, Mr. Ohlhorst, to appellee. We regard this as immaterial (Adams v. Decker, 34 Ill. App. 17), but the evidence tends to show that before the sale was made appellee knew that Ohlhorst was the person who had been negotiating with appellants.

When Ohlhorst first saw appellee he told him that Loehde and Hutchinson had offered him the property for $125 per foot, and appellee then asked him if he, Ohlhorst, was the man who had offered $100 per foot, and Ohlhorst told him he was. The evidence shows that appellee had, prior to this conversation, received appellants' letter announcing an offer of $100 per foot for the property.

Appellee's counsel urged that appellants had no license prior to August, 1894, and had none in 1895 prior to May 31, 1895. It was May 31, 1895, when they sent Mr. Ohlhorst to appellee, and appellee testified that, May 31, 1895, Mr. Ohlhorst agreed to purchase and appellee to sell, and that June 1, 1895, a written contract of sale was executed. We are of opinion that if appellants were unlicensed when they procured Ohlhorst as a customer or probable purchaser, this would not preclude a recovery, if they were licensed May 31, 1895, when they sent Ohlhorst to appellee, and June 1, 1895, when the written contract of sale was executed.

Lastly, appellee's counsel argues that appellants are not entitled to a commission because they were merely authorized to sell for a specific price, viz., $125 per foot, and that such being their authority, they can only recover on proof that they procured a purchaser ready, able and willing to purchase at the specific price. That the purchaser, Ohlhorst, was procured by them is shown by the evidence, and that he was ready, able and willing to purchase the property at $125 per foot, if he could have purchased it at that price, is evidenced by the fact that he purchased it from appellee for something over $127 per foot. The lot is 27½ feet in width, and the purchase price was $3,500. If a broker procures a purchaser ready, willing and able to purchase, and

brings such purchaser and the owner together, and the owner sells to the purchaser at a price different from that given by the owner to the broker, the owner can not escape payment of commission by reason of the change in price. Lawrence et al. v. Atwood, 1 Ill. App. 217; Adams v. Decker, 34 Ib. 17; Rees et al. v. Spruance, 45 Ill. 308.

Being of opinion that the evidence tended to prove appellants' case, and therefore that the case should have been submitted to the jury, the judgment will be reversed and the cause remanded.