# CASES

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1920.

---

## O. B. Kaull, Appellant, v. George Pasfield, Appellee.

BROKERS, § 48*—*when broker is not entitled to commissions.* A real estate agent was not entitled to commissions where the contract provided that he should receive as commissions what he was able .to obtain over a fixed purchase price, where the land was sold by the owner, who had retained the right to sell the land himself, to a party whose name had been mentioned to the owner by one of the agent's subagents, at a price less than the stipulated purchase price, and where there was an absence of showing that the purchaser was ever ready, willing or able to pay the stipulated price or more.

Appeal from the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the April term, 1920. Affirmed. Opinion filed October 27, 1920.

W. ST. J. WINES and S. D. SCHOLES, for appellant.

B. L. CATRON, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(1)

Appellant sued appellee in the circuit court of San-
gamon county to recover commissions for procuring
the sale of 1,246 acres of farm land owned by the
latter. The declaration consisted of the common
counts with a bill of particulars attached. At the close
of appellant's evidence, the court excluded the same
and instructed the jury to find the issues joined in
favor of appellee. Judgment was rendered on the
verdict, to reverse which this appeal is prosecuted.

In the spring of 1919 appellee owned two farms in
Madison county, Illinois, one comprising 667½ and the
other 578½ acres and known as the north and south
farms, respectively. Appellant, who, at that time, was
engaged in the business of buying and selling lands,
with an office in St. Louis, Missouri, learning that ap-
pellee had these farms for sale, called upon the latter
at Springfield, Illinois, where he lived.

The contract as testified to by appellant is as fol-
lows: "I heard on the train this Pasfield land was for
sale. I went to see him along in January or February
this year (1919). I inquired of him in regard to his
land in Madison county, near Mitchell. He told me
he had some land there and would sell it. I told him
I was in the business of buying and selling land and
would like for him to let me undertake to sell this land.
I asked him his price on the land and he told me his
price was $135 an acre. I told him that was too much
and insisted that was a higher price than he would be
able to get and that he ought to come down and take
a less price. I induced him at that time to agree to
accept a price of $130 net to him. On that basis I
undertook to sell the land for him, and was to have
for my compensation whatever I could get above $130
per acre. That was my arrangement and I continued
on that arrangement during the entire time while I
was negotiating and endeavoring to sell the land. It
was understood that I would ask above his price in
order to make my commission, if I could get it. I

priced the land after that for $150 an acre to various parties. Mr. Pasfield rather remonstrated with me about pricing it that high. He told me he was pricing it at $135 an acre to other parties, as he had first done to me, and he thought I was asking too much and would not be able to make any sale at all, but I insisted it was best to ask that much and get as much as I could. That, of course, would be for my benefit. I never took or sent any prospective buyer to Mr. Pasfield, with any proposition to buy this land. I understood that Mr. Pasfield reserved always the right to sell this land himself. He wrote me to that effect and told me that, and I understood that perfectly all of the time. * * * Pasfield said he would sell the south farm separate from the north, but not the north separate from the south.''

The evidence introduced tends to show that appellant had subagents in different parts of the States of Illinois and Missouri and that he listed these lands with the latter and attempted to sell the same. In April, 1919, one of appellant's agents at Peoria, Illinois, spoke about the land to Frank J. Potter of that city and there is some hearsay evidence tending to show that Potter viewed the land. A few days thereafter, appellee sold both farms to Potter for $160,000, the same being about $128.41 per acre. No evidence was introduced tending to show that Potter was ever ready, willing, and able to pay $130 or more per acre for the land.

The theory of appellant is that appellee, having asked for his assistance in making a sale of the lands and the same having been sold to a person whose attention thereto had been called by appellant through the latter's agents, appellant is entitled to the usual, customary and reasonable commission for bringing about the sale. We cannot agree with this contention as no such contract was made between the parties. There is no disagreement between the parties as to

what the terms of the contract were. Appellant was to receive no commission unless he produced a purchaser of the lands who was ready, able and willing to pay more than $130 per acre. No contention is or can be made that appellant had the exclusive right to sell the land, as appellee at all times reserved that privilege in himself. Before appellant would be entitled to any commission or remuneration, it would be necessary for him to procure a purchaser who would be ready, willing and able to pay more than $130 per acre. His commissions were dependent upon his procuring a purchaser who would pay more than that figure and would consist of the excess above the sum mentioned. No such purchaser was produced by appellant either directly or indirectly. In the case of *Rees v. Spruance,* 45 Ill. 308, it was held: "If the owner of property engages a broker to assist him in making a sale thereof, and stipulates that no commissions shall be paid unless a certain price is procured, such contract would of course be the measure of the rights and obligations of the parties. If the broker does not find a purchaser who will give the price fixed, he does not earn his commissions. If he does find one thus willing, he would be entitled to his commissions, and the owner of the property could not defeat his claim by voluntarily selling to the purchaser thus found, at a less price. Such an act would be a fraud upon the broker. But the broker who has acted under such a contract must, in order to maintain an action for his commissions, prove that he had found a purchaser ready to give the required price." In the case of *Burnett v. Potts,* 236 Ill. 499, it appears that the appellees in that case authorized the appellant to sell their farms for $35,000 net cash to themselves, appellant to have as commission all that he could sell the land for over that figure. Appellant made a contract of sale of the premises to another party for $37,500, $1,000 of which was paid to appellant at the time the

contract was executed, the balance to be paid at different times. The purchaser, however, defaulted under his contract and never paid anything on it except the $1,000. Appellees thereupon brought suit against appellant to recover the $1,000 paid to him by the supposed purchaser. The court said: "Since his right to any compensation did not arise under the contract until appellees were paid $35,000, it necessarily follows that the first $35,000 paid on the contract would belong to appellees. * * * Such contracts differ from the usual agency contract where the compensation of the agent is a per cent of the price at which the sale is made, only in that the compensation is contingent upon the agent's obtaining more for the land than the owner has agreed to accept. If appellant had sold this land for $35,000, he would have been compelled to turn the entire proceeds over to his principals. We do not see upon what legal grounds he can be allowed to retain any part of the purchase money when only $1,000 has been paid." To the same effect are the following cases: *Nudelman v. Wildes,* 160 Ill. App. 134; *Adams v. Kerfoot,* 189 Ill. App. 211; *Songer v. Wilson,* 52 Ill. App. 117.

Appellant must abide by the terms of his contract and, having failed to produce a purchaser for the lands in question at a price exceeding $130 per acre, is not entitled to any compensation and the judgment of the circuit court is therefore affirmed.

*Affirmed.*