# W. J. Savage, Appellant, v. Walter B. Stewart, Appellee.

## Gen. No. 7,103.

1. AGENCY—*liability of agent for disclosed principal to one who dealt with him with knowledge of the agency.* The son of the owner of real estate is not personally liable to a broker to whom he gave an exclusive contract to sell such land, for compensation for making a sale, where the evidence shows that such broker knew the son was not the owner of the land but was acting for the owner, the son having so informed him, and that the sales agency contract was drawn by another agent of the owner and executed by such agent in her behalf and that in negotiations with such agent the broker disclosed his knowledge of the true owner.

2. BROKERS—*broker's right to compensation on sale made to same purchaser after his negotiations failed.* A broker who procured a purchaser for farm lands on the owner's terms, and who was to receive as compensation any excess of the purchase price paid over the price fixed by the owner, is not entitled to compensation as for making the sale where the evidence shows that the purchaser procured by him executed a contract for the purchase of the land and entered into possession, that he was unable to make the payments after several extensions of time therefor and after a year suffered a forfeiture of the contract, that he continued in possession under a lease for more than three years more and then entered into a new contract of purchase, after negotiations with the owner alone, as a result of which the sale was consummated on different terms than under the original contract.

3. BROKERS—*when broker not entitled to compensation as a matter of law.* A verdict was properly directed against a broker suing for compensation for selling land where the evidence shows that the sale, though made to a purchaser procured by the broker, was made after forfeiture of the contract procured by the broker and for the purchaser's default, and on a contract executed three years later as the result of independent negotiations between the purchaser and the owner, the undisputed evidence being such that a verdict for the broker could not have been sustained.

Appeal from the Circuit Court of Will county; the Hon. ARTHUR W. DE SELM, Judge, presiding. Heard in this court at the April term, 1922. Affirmed. Opinion filed October 25, 1922.

A. A. McClanahan, James H. Christensen and Kelly & Orr, for appellant; James H. Christensen, of counsel.

Donovan & Bray, for appellee.

Mr. Justice Partlow delivered the opinion of the court.

The appellant, W. J. Savage, began suit in the circuit court of Will county against the appellee, Walter B. Stewart, to recover $10,000 which the appellant claimed the appellee owed him as a part of the proceeds of sale of certain real estate. There was a trial by jury, and at the close of all the evidence the court directed a verdict in favor of the appellee, judgment was rendered against the appellant for costs and in bar of the action, and from that judgment this appeal is prosecuted.

The evidence shows that Letitia Stewart was the owner of a farm of about 375 acres near the City of Wilmington, in Will county, which farm was for sale. Appellee, who was a physician residing in Joliet, was the son of Letitia Stewart and John W. Stewart, and he attended to the business affairs of his parents, who were quite old. Appellant resided at Streator, Illinois, and was in the real estate business. He learned that this farm was for sale, and on or about January 2, 1913, called at the office of the appellee, in the City of Joliet, and had a conversation with him relative to the sale of the farm. Appellee said that he wanted $25,000 net for the farm, and that appellant could have whatever sum was realized over and above that amount. Appellee directed appellant to the office of George N. Blatt, an attorney of Joliet, who was to prepare the contract. Appellant went to the office of Blatt, who drew a contract giving appellant the exclusive right for thirty days to sell the farm, which contract was signed by George N. Blatt, as agent for the

owner. This contract does not specify any price for
which the farm was to be sold, but merely gives the
appellant the exclusive right to sell it for thirty days.
After obtaining the contract, appellant advertised the
farm in several newspapers, and shortly afterwards
received a letter from Carl E. Johnson, of Grand
Meadow, Minnesota. On January 27, 1913, appellant
met Johnson at Wilmington, Illinois, and they went to
look at the farm. Appellant wanted $100 per acre,
and Johnson offered $35,000 for the farm, which offer
was accepted by appellant. They then went to the
office of Blatt, and a written contract was entered into
between the appellee and Johnson, which provided for
a purchase price of $35,000 with a cash payment of
$500, which was paid to appellee, and for a further
payment of $12,000 on or before September 1, 1913,
whereupon there was to be a deed to Johnson, who was
to execute notes and a mortgage for the balance of the
purchase price, and possession was to be given on
March 1, 1913. This contract was signed by Johnson,
and by "Walter B. Stewart, by George N. Blatt, his
agent." After the contract was signed, Johnson went
to his home in Minnesota, and appellant, later on the
same day, returned to the office of Blatt, where a pen-
cil memorandum was made at the bottom of the con-
tract between appellant and appellee, which stated
that "This farm above was sold this day to C. E.
Johnson, of Grand Meadow, Minnesota, by W. J.
Savage. Settlement to be made on or before Septem-
ber 1, 1913, as per agreement with Johnson." This
memorandum was signed by George N. Blatt, agent.
On February 28, 1913, appellant received a letter from
Blatt informing him that Johnson was expected at
Wilmington the following Saturday, and requesting
appellant to be there and meet him. Appellant went
to Wilmington at the time mentioned and met John-
son, who had his household goods and family with
him. There was some difficulty about obtaining pos-

session of the farm by reason of the fact that the tenant who was on the farm refused to deliver possession. There were some negotiations between Blatt and appellant which resulted in arrangements being made with the tenant by which possession was surrendered to Johnson, who has remained in possession since that time.

It is claimed by appellant that at the time the contract of sale was made with Johnson, Blatt was informed that it would be necessary for Johnson to sell his Minnesota farm of 320 acres before he could make the $12,000 payment on the Illinois farm. Johnson showed to appellant and Blatt a statement from his Minnesota bank to the effect that the Minnesota farm was worth $32,000 and had a mortgage on it of $10,000. When the September payment fell due, Johnson had not sold the Minnesota farm and was unable to make the payment, and the time was extended to November 1, 1913. Appellant contends that he informed appellee that if Johnson failed to complete the contract appellant would take the farm, provided he had thirty days within which to arrange for the money, but this is denied by appellee. Johnson failed to make the payment on November 1, 1913, and a further extension was granted to January 29, 1914, but on that date Johnson again failed to make the payment and a declaration of forfeiture was delivered to Johnson. Thereupon, Johnson entered into a written lease for the farm from March 1, 1914, to March 1, 1915, which lease was signed by Letitia Stewart. Johnson paid rent for 1913, and the $500 which was paid upon the original contract of purchase was applied in part payment of the 1913 rent. Johnson remained in possession under an oral contract from year to year from March 1, 1914, to March 1, 1917.

About December 1, 1915, appellant went to Blatt's office and told him it was time to have a settlement for the sale, and that he had waited long enough for the money. Blatt informed appellant the matter had been

taken out of his hands, and was then in the hands of Corlett & Clare, who were the agents of appellee. Appellant then went to appellee and demanded a settlement, and appellant claims that, at that time, appellee said the farm was not for sale and he had decided not to sell it, but this is denied by the appellee.

In 1916, Johnson sold his Minnesota farm, and in the fall of 1917 purchased the Stewart farm for $26,000, of which $10,000 was in cash, with notes for the balance secured by a trust deed on the premises. Prior to March 1, 1913, Letitia Stewart and her husband executed a deed for the premises to Johnson, for a consideration of $35,000, which deed was held by her agents to be delivered on March 1, 1913, when Johnson complied with his contract. This deed remained in the bank in Joliet from the date it was executed until the trade was completed with Johnson in the fall of 1917. At that time Mrs. Stewart was in California, and to avoid making a new deed, the consideration in the old deed was changed from $35,000 to $26,000 and the deed was delivered to Johnson and filed for record on October 25, 1917.

Appellee refused to pay appellant any part of the proceeds of the sale, and appellant began this suit alleging that appellee is indebted to him in the sum of $10,000. The declaration consists of three counts, each based upon the contract. Appellee filed the general issue and two special pleas. The first special plea alleged that the appellee was not the owner of the land, but it was the property of Letitia Stewart, and appellee was merely acting as her agent, and for that reason appellant had no cause of action against the appellee. The second special plea alleged that the appellant was unable to consummate the sale at the price and upon the terms agreed upon; that the supposed contract of purchase was not signed by the appellee, but was signed on behalf of the appellee by his agent,

all of which was well known to the appellant; that the agent, acting for the appellee in signing the contract, was not, at that time, nor at any time since, lawfully authorized in writing signed by the appellee, to act for the appellee, and therefore the supposed contract was, for lack of mutuality, not binding, either upon the appellee or the prospective purchaser, and was not enforceable against the prospective purchaser; that the prospective purchaser was unable to consummate the purchase at the price and on terms agreed upon, but made default and refused to carry out the contract, and thereupon the contract was forfeited.

The evidence amply sustains the position of appellee that appellant knew at the time the option on the land was given to appellant, that appellee was not the owner of the land, but that he was acting as the agent of his mother. This is apparent even from the evidence of appellant himself. He testified that when he first went to the office of appellee he said to appellee that he (appellant) "understood this home farm of his people, the home farm down there, was for sale," and that appellee replied, "Yes, it was for sale. It was a burden to his family, to his father and mother; that they were old, renting it to people; they weren't getting but small compensation for rent, and if they could sell it, it would be better; that the tenants kept coming and bothering them to fix the pump handle, and barbed wire, and different things, and the old folks were so old he (appellee) wanted to have it disposed of, so they wouldn't be pestered and bothered by tenants." The evidence of appellee and George N. Blatt shows that appellant referred to the farm as the Letitia Stewart farm and appellant knew he was dealing with the appellee as the agent of his mother. An agent is not liable on a contract made on behalf of his principal if, in fact, the other party knew of the agency (*Warren v. Dickson,* 27 Ill. 115; *Marckle v. Haskins,* 27 Ill. 382; *Siegel v. People,* 106 Ill. 89), and

it is only where the agent contracts as principal and does not disclose that he is acting as agent that the agent becomes personally liable as principal. *Weil v. Defenbaugh*, 65 Ill. App. 489; *Trench v. Harding County Canning Co.*, 67 Ill. App. 269; *Loehde v. Halsey*, 88 Ill. App. 452; *Geiselman v. Roddinghaus*, 158 Ill. App. 316. Under the evidence appellee was not liable on this contract as principal.

The contention of appellant is that he not only produced Johnson as a purchaser, but that a valid contract was entered into; that the contract was carried out in all of its provisions; that a deed was executed; that possession was given; that Johnson is now the owner and in possession of the premises as the result of the efforts of the appellant, and for these reasons the appellant is entitled to his money.

All appellant was entitled to was the excess of the sale price over $25,000. In order for him to be entitled to any amount over $25,000 it was necessary that he produce a purchaser who purchased the land as provided in the option, and that the trade be completed in all respects, or that he produce a purchaser who was ready, able and willing to purchase at a price in excess of $25,000. *Burnett v. Potts*, 236 Ill. 499; *Kaull v. Pasfield*, 220 Ill. App. 1. There can be no question under the evidence but what Johnson first wrote to appellant concerning this farm as the result of a newspaper advertisement. Johnson then went to Wilmington and met the appellant, and a contract of sale was entered into. The terms of that contract have been stated. On March 1, 1913, Johnson entered into possession of the farm. He was to pay $12,000 on September 1, 1913, whereupon a deed was to be executed and there was to be a trust deed or mortgage for the balance of the purchase price. On September 1, 1913, Johnson made default in the payment of this $12,000 and the time was extended on one or two occasions. He was not able to make the payments even at

he end of the time as extended, and as a result a declaration of forfeiture was drawn up and served upon Johnson. Afterwards Johnson entered into a written lease with Letitia Stewart for the premises from March 1, 1914, to March 1, 1915, and the $500 paid on the contract of purchase was applied upon the rent for 1913. Johnson occupied the premises under a lease until the fall of 1917, when the deed was executed as the result of negotiations entered into between the parties. Unless it can be said that the sale as finally consummated was the result of the efforts of the appellant, then the appellant is not entitled to recover in any amount for the services performed. The mere fact that a contract was entered into with Johnson for the purchase of this farm did not preclude the appellee from selling the farm to Johnson three or four years later, provided the sale was not the result of the contract secured by the appellant. It has been held in several cases that there must be a period within which, after a party introduced by an agent has declined to purchase, that the owner or any other broker may treat the negotiations at an end and entirely new and independent negotiations may begin. *Carlson v. Nathan,* 43 Ill. App. 364; *Watts v. Howard & Calkins,* 51 Ill. App. 243; *Mears v. Stone,* 44 Ill. App. 444; *Kerfoot v. Steele,* 113 Ill. 610; *Tombs v. Alexander,* 101 Mass. 255; *Earp v. Cummins,* 54 Pa. St. 394. The evidence shows that Johnson entirely failed to comply with his contract, and that a forfeiture was declared, and that over three years after the forfeiture was declared that new negotiations were opened between the parties, and as a result of such negotiations a sale was effected. Under these circumstances appellant did not secure a purchaser, did not sell the property at all, and therefore was not entitled to any part of the purchase price over and above $25,000.

It is insisted by the appellant that the court was in

error in directing a verdict, and it is contended that the question as to whether or not the efforts of appellant resulted in a sale was a question of fact for the jury. Under the undisputed evidence, for the reasons above stated, appellant was not entitled to recover, a verdict could not have been sustained if one had been returned. There was no evidence fairly tending to support appellant's cause of action, and the court properly directed a verdict for the appellee.

Attention is called to one or two respects in which it is claimed the court improperly admitted certain evidence. We have examined the evidence complained of and are of the opinion that the rulings of the court were correct.

We find no reversible error, and the judgment will be affirmed.

*Judgment affirmed.*