Bartley J. Naughton, Jr. and Stephen J. Olesak, Co-partners, Trading as Banner Tool Company, Appellees, v. Trustees System Discount Corporation of Chicago, Appellant.

Gen. No. 45,096.

Heard in the third division of this court for the first district at the February term, 1950.

Opinion filed June 30, 1950.

Released for publication July 25, 1950.

301

JAMES A. HOWELL, of Chicago, for appellant; WILLIAM S. SCHWAB, of Chicago, of counsel.

RAPPAPORT, CLORFENE & RAPPAPORT, of Chicago, for appellee; ODE L. RANKIN, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On July 10, 1947, Bartley J. Naughton, Jr. and Stephen J. Olesak, copartners trading as Banner Tool Co., filed a statement of claim in the municipal court of Chicago against M. B. Siegel, trading as M. B. Siegel Associates, for goods, wares and merchandise sold and delivered to the defendant at his special request on February 13, 1947, consisting of a cigarette snuffer mold, at $2,500, with interest thereon at 5 per cent per annum, the aggregate claim being $2,552.05. In a "defense" filed November 24, 1948, he denied that plaintiffs sold him any goods, wares and merchandise or a cigarette snuffer mold at his special instance and request; asserted that plaintiffs manufactured a cigarette snuffer mold; that the mold was not in conformity with the description and specifications which the defendant was advised were delivered to plaintiffs by a third party; and that "even though the defendant did not order the mold, if the mold had been in conformity with the description and specifications, he would have accepted it." On December 2, 1948, plaintiffs were given leave to make "Trustee System Discount Corporation of Chicago" an additional party defendant. In the amended statement of claim filed December 3, 1948, plaintiffs set out their claim against either defendant in the alternative for a cigarette snuffer mold sold and delivered to the Roland P. Place Co. division of Trustees System Discount Corporation of Chicago, and say that the latter corporation "asserts that it was the agent for defendant M. B. Siegel."

In the amended "defense" filed by Trustees System Discount Corp. it denied that plaintiffs sold and delivered the mold to it or to its wholly owned subsidiary, the Roland P. Place Co. It stated that it is in the business of fabricating plastic products; that Siegel engaged it to fabricate a plastic cigarette snuffer; that the fabrication was accomplished from a mold manufactured by plaintiffs at the special instance and request of Siegel; that the mold was delivered by plaintiffs to the corporate defendant as agent of Siegel; that plaintiffs had full knowledge of the fact that the corporate defendant was acting as agent of Siegel in accepting delivery of the mold; and that although the corporate defendant had dealings with plaintiffs concerning the mold, the dealings were carried on by them as agents for Siegel only for the purpose of requiring plaintiffs to rectify certain defects in the mold. The corporate defendant averred, in the alternative, that if it be chargeable as principal of M. B. Siegel, the cigarette snuffer mold manufactured by plaintiffs failed to meet the specifications for the proper operation of the mold, setting out the nature of the defect. The amended "defense" of the corporate defendant also alleged that despite the fact that it was understood that time was of the essence in the manufacture and delivery of the mold, there was an unreasonable delay in delivery.

The case was tried without a jury. At the close of plaintiffs' case the attorney for M. B. Siegel asked for a finding and judgment. Plaintiffs did not oppose the motion. Thereupon a finding was entered in favor of Siegel and judgment entered on the finding. There was no appeal from the judgment in favor of Siegel. The case proceeded against the corporate defendant, resulting in a finding and judgment for plaintiffs and against the corporate defendant in the sum of $2,500. This defendant appeals. For convenience, we will call

the Trustees System Discount Corp. of Chicago the defendant.

Defendant maintains that the mold manufactured by plaintiffs was not sold to it or to the Roland P. Place Co.; that if the mold was sold and delivered to the latter company it was sold and delivered to it as agent for its disclosed principal, M. B. Siegel, trading as M. B. Siegel Associates; and that as such agent for its disclosed principal it is not liable therefor. Plaintiffs insist that the contract to build the mold was made with the defendant. Bartley J. Naughton, Jr., one of the plaintiffs, testifying in their behalf, stated that their place of business was in Detroit, Michigan; that "about the middle" of the year 1945, he had a conversation at his place of business with Mr. Roland P. Place, at which time the latter produced two prints, received in evidence as plaintiffs' Exhibits 1A and 1B; that Mr. Place said he had to "get this mold out and these are the drawings"; and that he wanted to know "if we could proceed reasonably fast because they needed the mold." Mr. Naughton said they did not deviate in any way from the design as shown in the prints and that when the mold was completed it was shipped to the Roland P. Place Co., Midland, Michigan. That was approximately in August or September 1945. The next conversation or correspondence in connection with the mold had with the Roland P. Place Co. was two or three weeks after the mold was shipped, when that company wrote plaintiffs a memorandum. After the memorandum was written the mold was returned to plaintiffs for repairs. Plaintiff made certain repairs, after which the mold was sent back to the Place Company at Midland. This memorandum, received in evidence as plaintiffs' Exhibit 2, is dated June 14, 1946. Witness further said: "Of course, we asked for a purchase order on the mold. I asked for it at the time. The price was set for $2,500." The court inquired of

the witness: "Who was to pay you this $2,500?" to which witness answered: "W. B. or M. B. Siegel Company." The court inquired: "Who said so?" to which witness replied: "Mr. Place." The court inquired: "How did he say so?" to which witness replied: "He wrote me—he said it to us there in the office and he wrote us a note or a little—." Witness identified a copy of a letter dated March 20, 1947, from the Roland P. Place Co., to Mr. C. R. Overholser at Chicago. The latter was an employee of defendant. The letter expressed the opinion that plaintiffs were not at fault in the manufacture of the mold and that the difficulty traces back to the design made by Mr. Hahn of Detroit. The letter expressed the view that Mr. Siegel would not be fair were he to insist that continued work be done on the mold; that in the opinion of the writer the item has little merit in "today's market" and that Mr. Siegel "in all likelihood has no plans for it in exploitation." The witness stated that he spoke to a Mr. Kienbaum of the Place Company in Midland, Michigan on March 25, 1947. Witness told Mr. Kienbaum that he wanted to know why he wasn't being paid for his mold and that "Mr. Siegel had been refusing payment on the basis that the mold—." At this point he was interrupted by counsel who requested that the witness tell what Mr. Kienbaum said. It was at this point that Mr. Kienbaum showed him the copy of the letter dated March 20, 1947.

The witness identified a letter dated July 11, 1945, on the letterhead of Roland P. Place Co., Inc., addressed to plaintiffs by their trade name, reading:

"With reference to our telephone conversation of Monday relative to a new cigarette mold the drawings of which you looked at at the Associate Engineering, wish to advise that the price of $2500 is satisfactory. We are to furnish four cavity castings. The order for the above mold will be mailed to you by Bryn Mawr

Smokers Novelty Co., 63 E. Adams St., Chicago 3, Ill. You in turn will bill them direct. It is our understanding that this mold will be delivered in ten weeks."

The letter was signed "Roland P. Place Co. Division of Trustees System Discount Corp. of Chicago." Below the above signature also appeared the signature of Roland P. Place. To the left was a typewritten notation that a carbon copy of the letter was sent to "Bryn Mawr." On cross-examination by the attorney for Siegel the witness said that he received the letter of July 11, 1945, after the mold was started and that he never received a written order from Siegel. He did not write to Siegel or to the Byrn Mawr Smokers Novelty Company. The attorney asked Mr. Naughton: "Did you ever around July 11, 1945, within we will say 30 or 60 days from that date, write the Bryn Mawr Smokers Novelty, which is Mr. Siegel, and ask for an order?" to which witness replied: "No." From the conversation between the attorneys is it apparent that the parties recognized that Siegel also did business under the name of Bryn Mawr Smokers Novelty Company. In answer to the question: "Did you at any time or your partner at any time request a written order from Mr. Siegel or the Bryn Mawr Smokers Novelty?" the witness answered in the affirmative. He also answered that the request was made when Mr. Siegel was in his office approximately in November 1945. The attorney for Mr. Siegel then asked the witness as to whether Mr. Siegel said that he would give witness a written order. The attorney for plaintiffs objected on the ground that the question was not proper cross-examination. Thereupon the attorney for Siegel withdrew the question.

On cross-examination by the attorney for Siegel witness acknowledged that he received a letter from Mr. Place saying that an order would come from Mr. Siegel in Chicago. Upon cross-examination by the

attorney for defendant it was pointed out that plaintiffs' Exhibits 1A and 1B (the drawings) had a notation in the lower righthand corner which identified the design drawn by Associated Engineering Company of Detroit, and that after the word "customer" on the design appears "M. B. Siegel." Mr. Naughton testified that he had seen the name of Siegel after the word "customer" on the drawing. On cross-examination by the attorney for defendant Mr. Naughton was asked: "Now you testified to a conversation that you had with Mr. Place some time in 1945, I believe it was July, when the plans were brought into your office. Did Mr. Place at that time mention the name of Mr. Siegel?" to which witness answered: "Yes, it was in the conversation. We talked about Siegel, who the die was for, etc." Witness answered further: "He [Mr. Place] said there was a man in Chicago that was ordering this mold, and more or less shop talk. He has a lot of business there, you fellows get this out and I think I can get more work out of him, etc. More or less shop talk so we would get on that die and get it out."

On redirect examination by the attorney for plaintiffs Mr. Naughton testified that he saw Mr. Siegel in Detroit in November 1945, at the office of plaintiffs, at which time Mr. Place, Mr. McQueen and Mr. Olesak, Naughton's partner, were present. At that time Siegel said the mold was not producing the parts in the way he wanted it. Witness testified that Siegel said: "I can't hold these fellows responsible for it, they didn't design the mold." Witness also testified that Siegel said: "I will pay for the die if the die is right," and that Place said: "If you are not going to pay for it, I am, because they should be paid. This is built to blueprint." Witness quoted Siegel as saying "he wouldn't pay for nothing until it was the way he wanted it." Witness also testified that at the conversation in Detroit in November 1945, "Mr. Siegel said to Mr.

Place that if there was any trouble that he was paying Mr. Place to straighten it out, and it would be up to him to straighten it out." He testified further that in this conversation "Mr. Place kept saying if Siegel wasn't going to pay him that he would pay us."

It appears from the testimony that plaintiffs had previously done business with the Place Company and that Mr. Naughton was also in Mr. Siegel's office in Chicago in 1945 or 1946. On cross-examination, Naughton also testified that Siegel expressed a dissatisfaction with the mold and said: "We won't pay for the mold until it is made according to the sample." Clyde McQueen, called by plaintiffs, testified that in 1945 and 1946, he was an engineer for plaintiffs; that to the best of his recollection in the latter part of 1946, he was present at a conversation in the shop of plaintiffs at Detroit wherein Mr. Naughton, Mr. Place and Mr. Olesak were present; and that in the conversation Mr. Siegel claimed he would "have no part of the mold unless it would make the part to his satisfaction"; that Mr. Place "came back and said very emphatically that if it did not, if Mr. Siegel would not pay for it, he would pay for it himself, because that was the way he did business." Witness also testified that in the conversation "Mr. Siegel said that he did not want Mr. Place to pay for the mold."

A printed shipping memorandum issued by plaintiffs in their trade name, dated September 30, 1946 and received in evidence as one of plaintiff's exhibits, shows a cigarette snuffer mold "sold to Bryn Mawr Smokers Novelty Co., 63 E. Adams St., Chicago 3, Ill." and "shipped to Roland Place Co., Midland, Mich."

From a careful perusal of the record and exhibits we are convinced that defendant in ordering the mold was acting in the capacity of an agent for M. B. Siegel. Mr. Naughton testified that he asked Mr. Place for a

308

purchase order on the mold and that at that time the price was set at $2,500. This witness said that the $2,500 was to be paid by M. B. Siegel. The letter of the Roland P. Place Co., dated July 11, 1945, states that the order for the mold would be mailed to plaintiffs by "Bryn Mawr Smokers Novelty Co., 63 E. Adams St., Chicago 3, Illinois," and that plaintiffs would in turn "bill them direct." The record shows that Mr. Siegel also operated under the name of "Bryn Mawr Smokers Novelty Company." In November 1945, in the conversation at Detroit, Mr. Naughton asked Mr. Siegel for an order. When Mr. Naughton was asked whether Mr. Siegel said he would give a written order, the attorney for plaintiffs objected on the ground that the question was not proper cross-examination and the question was withdrawn. No written order was given by Siegel. The testimony of plaintiffs' witnesses as to the conversation with Siegel is to the effect that Siegel would pay for the mold if it was "right." According to the testimony of Mr. Naughton, Mr. Place, addressing Mr. Siegel (in the presence of Naughton) said that if Siegel was not going to pay for it "I am." This indicates that in that conversation Place considered that Siegel was primarily responsible for the payment of the mold. Mr. McQueen also testified that in the conversation at Detroit Mr. Place said "very emphatically" that if Mr. Siegel would not pay for the mold "he would pay for it himself."

The defendant, acting through Roland P. Place Co., was not the principal in the transaction. It was acting for M. B. Siegel, its disclosed principal. It is fundamental that when an agent makes a contract on behalf of his disclosed principal and the other contracting party knows of the agency, the agent is not bound by it and does not become personally liable as principal. *Savage v. Stewart*, 226 Ill. App. 388. There

was no contention in the pleadings or in the evidence that defendant was not acting within the scope of its authority. Siegel engaged the defendant to fabricate a plastic cigarette snuffer. A contract between Siegel and defendant was not introduced or made an issue in the case. We are not called upon to decide whether the trial judge properly entered judgment for Siegel at the close of plaintiffs' case. The evidence shows that Mr. Naughton, who transacted the business for plaintiffs, knew that the mold was to be manufactured for Siegel, that he should receive an order from Siegel and that he should look to Siegel for payment of his bill. He also knew that the drawings show Siegel as the "customer" of the Associated Engineering Company of Detroit, which made them. It is significant that the original action was against Siegel alone for the snuffer mold sold and delivered to Siegel "at his special instance and request." Trustees System Discount Corp. was not made a party defendant until sixteen months later.

██ Defendant states that it is not liable for any acts of the Roland P. Place Co., because of want of evidence showing that the latter company had authority to bind it, or that the entities were identical. There was evidence that the Roland P. Place Co. was a division of defendant. As such it had authority to contract for defendant. Defendant asserts that the mold failed to meet the specifications furnished to plaintiffs; that it was defective and not fit for the purpose intended; and that plaintiffs failed to deliver the mold within the time specified. We find that the evidence supports plaintiffs' contentions on these positions. Defendant also states that the court erred in reopening the case after both sides had rested. We are of the opinion that in reopening the case and allowing the introduction of further testimony the trial judge exercised a sound discretion. From the record in this case we are

convinced that the judgment should be reversed. Therefore, the judgment of the municipal court of Chicago is reversed and the cause remanded with directions to enter judgment for the defendant, Trustees System Discount Corp. of Chicago, and against plaintiffs.

*Judgment reversed and cause remanded with directions.*

LEWE, P. J. and KILEY, J., concur.